The State ex rel. Timken Company, Appellant, *v.* Kovach;
Industrial Commission of Ohio, Appellee.

[Cite as *State ex rel. Timken Co. v. Kovach,*
99 Ohio St.3d 21, 2003-Ohio-2450.]

(No. 2002–0115—Submitted March 25, 2003—Decided May 16, 2003.)

**Per Curiam.**

{¶ 1} Claimant, Joseph F. Kovach, suffered an industrial injury on November 1, 1995, while employed by appellant Timken Company. At that time, he was working as a scale counter. From the date of injury through July 14, 1996, claimant received temporary total disability compensation ("TTC").

{¶ 2} On July 15, 1996, claimant temporarily returned to work at a lower-paying janitorial position that could be performed with his medical restrictions. Self-insured Timken paid claimant wage-loss compensation pursuant to R.C. 4123.56(B) during this time.

{¶ 3} Because claimant's union contract prohibited him from remaining in a temporary position beyond a fixed period, claimant left his janitor position on November 1, 1998. With no new positions available to accommodate claimant's restrictions, Timken resumed paying TTC and continued doing so through July 17, 1999.

{¶ 4} On August 12, 1999, Timken orally offered claimant a position as a heat-treatment utility worker that would pay more than the position he had held at the time of his injury. While the lifting requirements of the job would occasionally exceed claimant's restrictions, Timken allegedly orally assured claimant that he would be "accommodated."

{¶ 5} Claimant declined the heat-treatment utility worker position, resulting in his permanent assignment to the earlier janitorial position pursuant to the union contract. Timken, in turn, refused to pay wage-loss compensation based on claimant's rejection of the heat-treatment utility-worker position.

{¶ 6} The issue whether Timken was required to pay wage-loss compensation after offering the higher-paying position eventually came before appellee Indus-

trial Commission of Ohio. A district hearing officer awarded wage-loss compensation, writing:

{¶ 7} "[C]laimant's earnings during this period were less than the claimant's Average Weekly Wage as a result of a medical impairment causally related to the industrial injury in this claim, and the claimant has completed [sic] with the requirements of Ohio Administrative Code 4125–1–01.

{¶ 8} "* * *

{¶ 9} "The Self–Insured employer alleged that the claimant was offered a higher paying job on 08/12/1999 as a heat treat operator, but declined this position. Thus, the employer apparently argues that claimant's wage loss after 08/12/1999 is not due to the industrial injury herein, but rather is due to the claimant's refusal of a new job. The Hearing Officer finds this argument unpersuasive for several reasons.

{¶ 10} "First, Ohio Administrative Code 4125–1–01(D)(2) provides that the claimant's failure to accept a good faith offer of suitable employment is a factor to consider in a wage loss claim. However, the rule goes on to state that such offers 'will not be given consideration' if the employer of record fails to make the offer *in writing* and includ[e] a 'reasonable description of the job duties, hours, and rate of pay.'

{¶ 11} "Here, the employer alleges that the claimant was *orally* offered the heat treat job on 08/12/2000 [sic, 1999]. However, no evidence has been presented to corroborate Ms. Stelluto's testimony that this offer was made in writing. Further, the written job description, dated 07/13/1999 is not only not a job *offer* itself, it also fails to contain the job's hours or rate of pay. Thus, the employer's alleged job offer cannot be considered pursuant to the Ohio Administrative Code.

{¶ 12} "Even assuming that the claimant did receive a written job offer on 08/12/2000 [sic, 1999], the Hearing Officer finds that the heat treat operator's job offered to the claimant is not within the restrictions imposed by Dr. Reichert. The claimant's restrictions include no repetitive lifting above 25 pounds, and *no* lifting above 50 pounds. However, the 07/13/2000 job description provided by the employer states that this job requires some lifting over 50 and 75 pounds. Although the employer argued that this is rarely required, it is, nevertheless, part of the job.

{¶ 13} "Ms. Stelluto stated that the employer would have accommodated the claimant by providing a helper to assist the claimant with heavy lifting. However, there is no evidence that this accommodation was promised to the claimant at the time of the alleged job offer.

{¶ 14} "Finally, the Hearing Officer finds the 08/12/1999 journal entry from Mr. Lawrence, the claimant's supervisor, to be insufficient to corroborate the

employer's job offer, as it provides no details of the meeting, states only that the claimant '*will* be offered job' (emphasis added), and indicates that the claimant 'must take old job.' The claimant testified that he had never worked as a heat treat operator, and thus this was not his 'old job.' The Hearing Officer accepts the claimant's testimony on this issue.

{¶ 15} "For these reasons, the Hearing Officer rejects the employer's arguments regarding the alleged job offer on 08/12/2000 [sic 1999]." (Emphasis sic.)

{¶ 16} With only slight modification, the order was administratively affirmed.

{¶ 17} Timken turned to the Court of Appeals for Franklin County, which declined to issue a writ of mandamus ordering the commission to vacate its order of wage-loss compensation. It upheld the commission's reasoning and rejected Timken's assertion that wage-loss compensation was inappropriate absent evidence that claimant had searched for other comparably paying employment.

{¶ 18} This cause is now before this court upon appeal as of right.

{¶ 19} The purpose of wage-loss compensation is to return to work those claimants who cannot return to their former position of employment but can do other work. Ideally, that other work generates pay comparable to the claimant's former position. Where it does not, wage-loss compensation covers the difference.

{¶ 20} Receipt of such compensation hinges on whether there is a causal relationship between injury and reduced earnings, more specifically, on a finding that "claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a lifestyle choice." *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland* (1999), 84 Ohio St.3d 405, 407, 704 N.E.2d 570.

{¶ 21} The requirement of a causal relationship is often satisfied by evidence of an unsuccessful search for other employment at the preinjury rate of pay. *State ex rel. Ooten v. Siegel Interior Specialists Co.* (1998), 84 Ohio St.3d 255, 256, 703 N.E.2d 306. Because claimant allegedly refused a comparably paying position at Timken and did not search for another job, Timken asserts that claimant is ineligible for wage-loss compensation. Timken's position is untenable.

{¶ 22} Relying on the Ohio Administrative Code, Timken asserts that a job search is mandatory. We have said otherwise. In *Ooten*, we indicated that a job search is "not universally required." Id. And in *State ex rel. Brinkman v. Indus. Comm.* (1999), 87 Ohio St.3d 171, 718 N.E.2d 897, we excused the claimant's lack of a job search when he had secured lucrative, albeit part-time, employment with a realistic possibility that it would change to full-time.

{¶ 23} *Brinkman* and *Ooten* respectively involved part-time employment and self-employment—two categories of employment subject to enhanced scrutiny "to

ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices." *Brinkman,* 87 Ohio St.3d at 173, 718 N.E.2d 897.

{¶ 24} The employment at issue herein is full-time, not part-time, which lessens—but does not eliminate—these concerns. Indeed, "in *some* situations, the commission may require a claimant with full-time employment to nevertheless continue looking for 'comparably paying work.' " *State ex rel. Yates v. Abbott Laboratories, Inc.,* 95 Ohio St.3d 142, 2002-Ohio-2003, 766 N.E.2d 956, ¶ 38. For regardless of the character of the work, "the overriding concern in all of these cases—as it has been since the seminal case of *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827—is the desire to ensure that a lower-paying position—regardless of hours—is necessitated by the disability and not motivated by lifestyle choice. And this is a concern that applies equally to regular full-time employment." Id. at ¶ 37.

{¶ 25} In determining whether to excuse a claimant's failure to search for another job, we use a broad-based analysis that looks beyond mere wage loss. This approach was triggered by our recognition that "[w]age-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life—long after wage-loss compensation has expired." *Brinkman,* 87 Ohio St.3d at 174, 718 N.E.2d 897.

{¶ 26} In *Brinkman,* a job search was deemed unnecessary where the claimant secured a part-time job with a high hourly wage and a realistic possibility of being offered a full-time position. Conversely, in *Yates,* evidence of a good-faith job search *was* required of a claimant with full-time employment who was making drastically reduced postinjury wages. We stressed in *Yates* that the claimant had voluntarily relocated to a place with a high rate of unemployment and was grossly underutilizing her college degree and real estate license.

{¶ 27} In the case before us, our broad-based analysis allows us to consider the fact that claimant's current employment is with Timken—the same company at which he was injured. This militates against requiring a job search because claimant has some time invested with Timken. He has years towards a company pension. Moreover, his longevity may have qualified him for additional weeks of vacation or personal days. Much of this could be compromised if claimant were to leave Timken for a job elsewhere.

{¶ 28} *Brinkman* held that it was inappropriate to ask a claimant to "leave a good thing" solely to narrow a wage differential. Given claimant's years of service with Timken, the benefits he receives there outweigh a higher-paying position he might be able to get at a new company. Thus, we apply *Brinkman's* rationale and preserve claimant's eligibility for wage-loss compensation.

{¶ 29} Timken argued that claimant's failure to seek other employment, failure to file wage statements, and failure to register with OBES, as required by the Administrative Code, made him ineligible for wage-loss compensation. However, the majority found that Timken paid claimant wage-loss compensation during his first stint as a janitor from July 15, 1996, through November 1, 1998, without requiring any of those things.

{¶ 30} "[T]he evidence indicates that the employer waived several of the requirements for filing wage-loss applications. Here, the employer provided a light-duty job and paid wage-loss compensation for years, waiving the requirements of filing at OBES, doing a job search, etc. When the employer reinstated claimant to another janitorial job after a period of TTD [temporary total disability], it was reasonable for claimant to believe that he would report for work as before and receive wage-loss compensation without filing a job search log, registering with OBES, etc. Given that the employer waived the requirements from July 1996 to August 1999, claimant would not reasonably have known that the waiver was withdrawn as of his job refusal in August 1999."

{¶ 31} Timken finally argues that claimant declined its offer of employment as a more highly paid heat-treatment utility worker and that under the Administrative Code, claimant thereby forfeited wage-loss compensation. There are two flaws in this assertion. First, Ohio Adm.Code 4125–1–01(D)(2)(a) requires such offers to be in writing and to describe duties, hours, and rate of pay. Timken did not do this. Second, the position offered by Timken required tasks that conflicted with claimant's medical restrictions, and Timken was vague as to how it would accommodate claimant if he took the position. Given these two deficiencies, the commission did not abuse its discretion in finding that claimant did not unreasonably decline an offer of suitable comparably paying employment.

{¶ 32} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

F.E. SWEENEY, J., dissents and would reverse the judgment of the court of appeals.

---

Day, Ketterer, Raley, Wright & Rybolt, Ltd., Darrell N. Markijohn and Stephen E. Matasich, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee.