DECISION.
{¶ 1} Relator, International Truck and Engine Corporation, commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio ("commission") to vacate its order awarding R.C. 4123.56(B) wage loss compensation to claimant/respondent, Richetta F. Reed, and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Relying on Ohio Adm. Code 4125-1-01(D), the magistrate found that generally, a claimant must conduct a good faith job search to be eligible for wage loss compensation. Receipt of wage loss compensation hinges on whether there is a causal relationship between injury and reduced earnings. The requirement of a causal relationship is often satisfied by evidence of an unsuccessful search for other employment at the pre-injury rate of pay.
 {¶ 3} The magistrate also recognized that under certain limited circumstances a claimant may be excused from the obligation to conduct a good faith job search and retain eligibility for wage loss compensation. For example, where the claimant receives other significant employment benefits from a lower paying job (unrelated to a lifestyle choice), it is inappropriate to ask a claimant to "leave a good thing" solely to narrow a wage differential. State ex rel. Timkin v. Kovach,99 Ohio St.3d 21, 2003-Ohio-2450, at ¶ 19-28, citing State ex rel. Brinkman v.Indus. Comm. (1999), 87 Ohio St.3d 171. In determining whether to excuse a claimant's failure to search for comparably paying work, the commission must use a "broad based analysis" that looks beyond mere wage loss. Timkin, at ¶ 19-28. This broad based analysis requires the commission to look at a variety of factors in assessing whether the "claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a life style choice." Timkin, citingState ex rel. Jones v. Kaiser Found. Hosp. Cleveland (1999),84 Ohio St.3d 405, 407.
 {¶ 4} The magistrate determined that the commission abused its discretion when it excused the claimant's failure to conduct a job search without engaging in any analysis of why the claimant should not be willing to leave her job for better paying employment. Moreover, notwithstanding that the claimant had the burden of proving her entitlement to wage loss compensation, the claimant produced no evidence showing that to require her to conduct a job search would be asking her to "leave a good thing." For example, the magistrate noted that the claimant presented no evidence that she expects a pay raise at her current job that could significantly narrow the wage differential. Nor did claimant present any evidence that her current employment provided other valuable benefits which would justify her failure to look for better paying employment. Given the absence of any evidence on this point, the magistrate found that a remand to the commission to conduct a broad based analysis would be futile. Therefore, the magistrate determined that the commission abused its discretion in awarding wage loss compensation and the magistrate has recommended that we grant a writ of mandamus vacating the commission's order and enter an order denying claimant's wage loss compensation.
 {¶ 5} Respondents filed objections to the magistrate's decision. In the first objection, respondents argue that the magistrate improperly substituted his own assessment of the evidence thereby usurping the role of the commission. Respondents point to Dr. Sesslar's report which identifies a number of physical restrictions on the claimant's ability to work. In essence, respondents argue that these restrictions are so severe that the claimant should be excused from conducting a good faith job search for higher paying employment. In fact, respondents assert that the claimant is fortunate to be working at all. Therefore, respondents contend that there was some evidence supporting the commission's decision to award wage loss compensation despite the claimant's failure to conduct a good faith job search.
 {¶ 6} Although the commission indicates that it based its award of wage loss compensation on the medical report of Dr. Sesslar and the wage information on file, it makes no attempt to connect any of this evidence with the narrow exceptions to the general requirement that a claimant must conduct a good faith job search to be eligible for wage loss compensation. As noted by the magistrate, the commission, in effect, excused claimant's failure to conduct a good faith job search without any explanation for why the claimant should be unwilling to leave her job for better paying employment. We agree with the magistrate that the commission abused its discretion by granting wage loss compensation under these circumstances. Therefore, we overrule respondents' first objection.
 {¶ 7} Respondents argue in the second objection that even if the commission should not have granted wage loss compensation without conducting a "broad based analysis," the magistrate erred when he concluded that a remand to the commission to conduct such an analysis would be futile. We disagree.
 {¶ 8} The claimant has the burden of producing evidence of his or her entitlement to wage loss compensation. If the claimant fails to meet this burden, wage loss compensation must be denied. Ohio Adm. Code4125-1-01(D). Here, the claimant failed to submit any evidence demonstrating that her circumstances qualified under any of the narrow exceptions to the general rule that a claimant seeking working wage loss benefits must demonstrate a good faith search for comparably paying work. Claimant submitted no evidence that her job at RJ Investments had the prospect of becoming more financially lucrative in the future, or that it had the potential of eventually eliminating her wage loss. Thus, there is no evidence that the claimant would "be leaving a good thing" by seeking better paying work to alleviate the wage loss. As previously noted, the purpose of requiring a good faith job search is to establish the causal relationship between the injury and the reduced earnings. Because the claimant presented no evidence justifying a deviation from the general rule requiring a good faith job search, we agree with the magistrate that a remand to the commission would be futile. Therefore, we overrule respondents' second objection.
 {¶ 9} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we grant the requested writ of mandamus.
Objections overruled; writ of mandamus granted.
 APPENDIX A MAGISTRATE'S DECISION Rendered on July 24, 2006 IN MANDAMUS {¶ 10} In this original action, relator, International Truck and Engine Corporation, request a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding R.C. 4123.56(B) wage loss compensation to respondent Richetta F. Reed, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 11} 1. On January 31, 2001, Richetta F. Reed ("claimant") sustained an industrial injury while employed as an assembler for relator, a self-insured employer under Ohio's Workers' Compensation laws. The industrial claim is allowed for: "adhesive capsulitis right shoulder; right shoulder rotator cuff impingement" and is assigned claim No. 01-811981.
 {¶ 12} 2. In its complaint at paragraph 13, relator alleges that claimant's average weekly wage ("AWW") set for the industrial injury is $688.44. In its answer, respondent commission denies paragraph 13 of the complaint on grounds that it lacks knowledge of the matter. In its answer, respondent claimant also denies paragraph 13 of the complaint for lack of knowledge. However, in this action, respondents have not disputed that AWW is set at $688.44.
 {¶ 13} 3. On April 1, 2005, claimant began employment with RJ Investments, Inc. as an office manager.
 {¶ 14} 4. On August 2, 2005, relator moved for so-called working wage loss compensation beginning April 1, 2005. In support, relator submitted a form C-140 medical report that was completed by Chris Sesslar, M.D., on March 2, 2005.
 {¶ 15} 5. On the C-140 medical report, Dr. Sesslar indicates by checkmark that claimant can occasionally lift or carry up to five pounds but she can never lift or carry six pounds or over. Dr. Sesslar further indicates that claimant can sit for eight hours, stand for eight hours, and walk for eight hours. She can occasionally bend, squat and reach. However, she cannot crawl or climb. She can use her right and left hands in repetitive action such as simple grasping or fine manipulation. She cannot use her right hand for pushing and pulling arm controls. Dr. Sesslar further indicates that claimant can work eight hours per day, five days per week within her restrictions.
 {¶ 16} 6. In support of her wage loss claim, claimant submitted a letter, dated September 22, 2005 from the owner of RJ Investments, stating:
 She has been hired to run a thirty-five unit apartment complex. She is paid $6.00 per hour for forty hours per week. The job requires her to do the following:
 Interview and take applications for new tenants
 Work with the maintenance crew by scheduling repairs when needed.
 Collect and deposit all rent
 Schedule and maintain a cleaning crew to keep hallways and all general areas around the property clean and safe
 Schedule inspections on regular basis in all apartments to maintain a running record on such items as running faucets, toilets, sinks, etc.
 Ms[.] Reed has medical restrictions that limits her on such thing[s] as running a sweeper or general housekeeping to clean an apartment when a tenant moves out.
 {¶ 17} 7. Claimant also submitted copies of RJ Investments' checks payable to claimant for work performed. The checks indicate that claimant was paid $960 monthly for the months of April, May, June and July 2005.
 {¶ 18} 8. Claimant also submitted C-141 job search forms indicating that she conducted a job search beginning May 12, 2003 through June 20, 2003. This job search ended some 21 months prior to the start of her employment with RJ Investments. Also, RJ Investments is not among the employer contacts listed on the C-141 forms.
 {¶ 19} 9. On October 11, 2005, the wage loss claim was heard by a district hearing officer ("DHO"). Following the hearing, the DHO issued an order granting wage loss compensation beginning April 1, 2005. The SHO's order explains:
 The Staff [sic] Hearing Officer finds that the injured worker returned to employment and suffered a wage loss as a direct result of her 01/31/2001 industrial injury. The District Hearing Officer finds that the injured worker has physical restrictions as set forth in the medical report of Chris Sesslar, M.D., dated 03/01/2005. These restrictions prevent the injured worker from returning to and performing the duties of her former position of employment as an assembler. At the time of her industrial injury, the injured worker was employed on the assembly line mounting air conditioners and heaters. These restrictions include occasional bending and squatting, no crawling and climbing and occasional reaching. These restrictions include occasionally lifting up to five pounds and never lifting anything in excess of 6 pounds. These restrictions also include no pushing and pulling arm controls. These restrictions also include the limited use of the right upper extremity. These restrictions are stated to be permanent by Dr. Sesslar.
 The District Hearing Officer further finds that the injured worker returned to employment on 04/01/2005 as an office manager for R.J. Investors, a position which is within the physical restrictions stated by Dr. Sesslar.
 The District Hearing Officer further finds that the injured worker's present earnings are less than her wages were at the time of the industrial injury and that this wage loss is the result of a medical impairment causally related to her 01/31/2001 industrial injury.
 The District Hearing Officer finds that the injured worker has otherwise complied with the requirements of the Industrial Commission Wage Loss Rules set out at Chapter 4125-1 of the Ohio Administrative Code.
 It is the order of the District Hearing Officer that Working Wage Loss compensation be granted from 04/01/2005 to 09/15/2005.
 Wage Loss Compensation may continue upon the submission of evidence which documents and [sic] ongoing wage loss due to the 01/31/2001 industrial injury.
 Wage loss is payable at 66 2/3% of the difference between the injured worker's present earnings and the injured worker's Average Weekly Wage, not to exceed the statewide Average Weekly Wage. Wage loss is authorized no longer than the time period specified in O.R.C. 4123.56.
 This order is based upon the injured worker's testimony at hearing, the medical report of Dr. Sesslar, dated 03/01/2005, Ohio Revised Code Section 4123.56(B), Ohio Administrative Code Chapter 4125-1, and the wage information in file.
 {¶ 20} 10. Relator administratively appealed the DHO's order of October 11, 2005. On the notice of appeal, relator stated the reason for the appeal:
 Evidence does not support that the claimant conducted a good faith job search or is otherwise entitled to working wage loss benefits.
 {¶ 21} 11. Following a November 9, 2005 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
 * * * [T]he injured worker's C-86 motion filed 08/02/2005 requesting the payment of Wage Loss benefits from 04/01/2005 to 09/15/2005 is granted.
 The Staff Hearing Officer finds that the injured worker returned to employment and suffered a wage loss as a result of her industrial injury occurring on 01/31/2001. The Staff Hearing Officer finds that the injured worker has physical restrictions as set forth in the medical report of Dr. Chris Sesslar dated 03/01/2005. The Staff Hearing Officer finds that these restrictions include occasional bending and squatting, no crawling or climbing and occasional reaching as well as occasional lifting up to five pounds and never lifting anything in excess of six pounds. No pushing or pulling of arm controls as well as the limited use of the injured worker's right extremity. The Staff Hearing Officer finds that the injured worker's physician of record, Dr. Sesslar opines these restrictions to be permanent.
 The Staff Hearing Officer further finds that the injured worker returned to employment on 04/01/2005 as an office manager, a position of employment within the medical restrictions opined by Dr. Sesslar. The Staff Hearing Officer further finds that the injured worker's present earnings are less than her wages were at the time of the industrial injury and that this wage loss is the result of a medical impairment causally related to her industrial injury of 01/31/2001. The Staff Hearing Officer finds that the injured worker has otherwise complied with the requirements of the Industrial Commission Wage Loss Rule set out at chapter 4125-1-01. It is therefore the order of the Staff Hearing Officer that Wage Loss Compensation is granted from 04/01/2005 to 09/15/2005. Wage Loss Compensation may continue upon the submission of evidence which documents an ongoing wage loss due to the 01/31/2001 industrial injury. Wage Loss is payable at 66 2/3% of the difference between the injured worker's present earnings and the injured worker's average weekly wage, not to exceed the State Wide Average Weekly Wage. Wage Loss is authorized no longer than the time period specified in Ohio Revised Code 4123.56.
 This order is based upon the medical report of Dr. Sesslar, the injured worker's physician of record, dated 03/01/2005, Ohio Revised Code 4123.56(B), Ohio Administrative Code Chapter 4125-1-01 and the wage information on file.
 {¶ 22} 12. Relator filed an appeal from the SHO's order of November 9, 2005.
 {¶ 23} 13. On December 8, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 9, 2005.
 {¶ 24} 14. On December 19, 2005, relator, International Truck and Engine Corporation, filed this mandamus action.
Conclusions of Law:
 {¶ 25} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 26} The commission awarded wage loss compensation beginning April 1, 2005 when claimant began her new job as an office manager with RJ Investments even though it is undisputed that claimant did not conduct a job search at anytime subsequent to April 1, 2005. Moreover, the commission failed to explain why it believed that claimant's circumstances excused a job search during her employment with RJ Investments.
 {¶ 27} Ohio Adm. Code 4125-1-01 sets forth the commission's rules applicable to the adjudication of applications for wage loss compensation.
 {¶ 28} Ohio Adm. Code 4125-1-01(A) provides the following definitions:
 (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
 (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 (9) "Working wage loss" means the dollar amount of the diminishment in wages sustained by a claimant who has returned to employment which is not his or her former position of employment. However, the extent of the diminishment must be the direct result of physical and/or psychiatric restriction(s) caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.
 {¶ 29} Ohio Adm. Code 4125-1-01(D) provides:
 In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
 (1) The claimant's search for suitable employment.
 * * *
 (b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.
 (c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 30} Through case law, the Supreme Court of Ohio has set forth a broad-based analysis for determining whether to excuse a claimant's failure to search for another job when the job the claimant found creates a wage differential with respect to the former position of employment. That broad-based analysis and the case law from which it is derived, is succinctly set forth in State ex rel. Timken Co. v.Kovach, 99 Ohio St.3d 21, 2003-Ohio-2450, at ¶ 19-28:
 The purpose of wage-loss compensation is to return to work those claimants who cannot return to their former position of employment but can do other work. Ideally, that other work generates pay comparable to the claimant's former position. Where it does not, wage-loss compensation covers the difference.
 Receipt of such compensation hinges on whether there is a causal relationship between injury and reduced earnings, more specifically, on a finding that "claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a lifestyle choice." State ex rel. Jones v. Kaiser Found. Hosp. Cleveland (1999), 84 Ohio St.3d 405, 407, 704 N.E.2d 570.
 The requirement of a causal relationship is often satisfied by evidence of an unsuccessful search for other employment at the preinjury rate of pay. State ex rel. Ooten v. Siegel Interior Specialists Co. (1998), 84 Ohio St.3d 255, 256, 703 N.E.2d 306. Because claimant allegedly refused a comparably paying position at Timken and did not search for another job, Timken asserts that claimant is ineligible for wage-loss compensation. Timken's position is untenable.
 Relying on the Ohio Administrative Code, Timken asserts that a job search is mandatory. We have said otherwise. In Ooten, we indicated that a job search is "not universally required." Id. And in State ex rel. Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171, 718 N.E.2d 897, we excused the claimant's lack of a job search when he had secured lucrative, albeit part-time, employment with a realistic possibility that it would change to full-time.
 Brinkman and Ooten respectively involved part-time employment and self-employment — two categories of employment subject to enhanced scrutiny "to ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices." Brinkman, 87 Ohio St.3d at 173, 718 N.E.2d 897.
 The employment at issue herein is full-time, not part-time, which lessens — but does not eliminate — these concerns. Indeed, "in some situations, the commission may require a claimant with full-time employment to nevertheless continue looking for 'comparably paying work.'" State ex rel. Yates v. Abbott Laboratories, Inc. 95 Ohio St.3d 142, 2002-Ohio-2003, 766 N.E.2d 956, ¶ 38. For regardless of the character of the work, "the overriding concern in all of these cases — as it has been since the seminal case of State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995), 72 Ohio St.3d 210, 648 N.E.2d 827 — is the desire to ensure that a lower-paying position — regardless of hours — is necessitated by the disability and not motivated by lifestyle choice. And this is a concern that applies equally to regular full-time employment." Id. at ¶ 37.
 In determining whether to excuse a claimant's failure to search for another job, we use a broad-based analysis that looks beyond mere wage loss. This approach was triggered by our recognition that "[w]age-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired." Brinkman, 87 Ohio St.3d at 174, 718 N.E.2d 897.
 In Brinkman, a job search was deemed unnecessary where the claimant secured a part-time job with a high hourly wage and a realistic possibility of being offered a full-time position. Conversely, in Yates, evidence of a good-faith job search was required of a claimant with full-time employment who was making drastically reduced postinjury wages. We stressed in Yates that the claimant had voluntarily relocated to a place with a high rate of unemployment and was grossly underutilizing her college degree and real estate license.
 In the case before us, our broad-based analysis allows us to consider the fact that claimant's current employment is with Timken — the same company at which he was injured. This militates against requiring a job search because claimant has some time invested with Timken. He has years towards a company pension. Moreover, his longevity may have qualified him for additional weeks of vacation or personal days. Much of this could be compromised if claimant were to leave Timken for a job elsewhere.
 Brinkman held that it was inappropriate to ask a claimant to "leave a good thing" solely to narrow a wage differential. Given claimant's years of service with Timken, the benefits he receives there outweigh a higher-paying position he might be able to get at a new company. Thus, we apply Brinkman's rationale and preserve claimant's eligibility for wage-loss compensation.
 {¶ 31} Here, the commission, in effect, excused claimant's failure to conduct a job search in the absence of setting forth any analysis as to why claimant should not be willing to leave her job for better paying employment.
 {¶ 32} Claimant's employment as an assembler with relator undisputedly produced an AWW of $688.44. As an office manager at RJ Investments, relator works a 40-hour week earning $6 per hour — producing an AWW of $240.
 {¶ 33} Notwithstanding that claimant had the burden of proving her entitlement to wage loss compensation, she produced no evidence showing that requiring her to conduct a job search would be asking her to "leave a good thing."
 {¶ 34} There is no evidence, for example, that relator realistically expects a pay raise at RJ Investments that could significantly narrow the wage differential. There is no evidence that RJ Investments provides its employees with any benefits such as an employer contribution towards a retirement plan, health insurance, vacation leave, or sick leave.
 {¶ 35} Given the absence of any evidence upon which the commission could have determined that requiring a job search would be asking claimant to leave a good thing, the commission abused its discretion in awarding wage loss compensation. Moreover, a remand to the commission to conduct a broad-based analysis would be futile.
 {¶ 36} Accordingly, for all of the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its award of wage loss compensation, and to enter an order denying claimant's motion for wage loss compensation.