The **STATE** ex rel. **DELUXE CORPORATION, Relator,**

v.

**STANLEY et al., Respondents.**

[Cite as *State ex rel. Deluxe Corp. v. Stanley,* 178 Ohio App.3d 1, 2008-Ohio-4066.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–783.

Decided Aug. 12, 2008.

Vorys, Sater, Seymour and Pease, L.L.P., and Margaret D. Everett, for relator.

Heller, Maas, Moro & Magill Co., L.P.A., and C. Douglas Ames, for respondent John C. Stanley.

Sheryl Creed Maxfield, First Assistant Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.

SADLER, Judge.

{¶ 1} Relator, Deluxe Corporation, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order awarding respondent John C. Stanley ("claimant") R.C. 4123.56(B) wage-loss compensation beginning September 18, 2006, and to enter an order denying said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (The magistrate's decision is attached as an appendix.) Therein, the magistrate concluded that the commission had abused its discretion and recommended that this court issue a writ of mandamus ordering the commission to vacate its order awarding wage-loss compensation to respondent and to enter a new order denying the compensation. The claimant filed objections to the magistrate's decision, and relator filed a memorandum opposing the objections. This cause is now before the court for a full review.

■ {¶ 3} "The purpose of wage-loss compensation is to return to work those claimants who cannot return to their former position of employment but can do other work. Ideally, that other work generates pay comparable to the claimant's former position. Where it does not, wage-loss compensation covers the difference." *State ex rel. Timken Co. v. Kovach,* 99 Ohio St.3d 21, 2003-Ohio-2450, 788 N.E.2d 1037, ¶ 19. Ohio Adm.Code 4125–1–01(A)(9) defines "working wage loss" as "the dollar amount of the diminishment in wages sustained by a claimant who has returned to employment which is not his or her former position of employment. However, the extent of the diminishment must be the direct result of physical and/or psychiatric restriction(s) caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123 of the Ohio Revised Code."

■ {¶ 4} In other words, "[r]eceipt of such compensation hinges on whether there is a causal relationship between injury and reduced earnings, more specifically, on a finding that 'claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a lifestyle choice.' " Id. at ¶ 20, quoting *State ex rel. Jones v. Kaiser Found. Hosps.* (1999), 84 Ohio St.3d 405, 407, 704 N.E.2d 570. In order to ensure the causal relationship between an injured worker's wage diminishment and his industrial injury, Ohio Adm.Code 4125–1–01(D)(1)(c) provides that "[a] good faith effort to search for suitable employment which is comparably paying work is required * * * of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work."

{¶ 5} "Comparably paying work" is defined as "suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment." Ohio Adm.Code 4125–1–01(A)(8). In this case it is undisputed that the claimant works as a security guard earning $7.75 per hour, whereas in his former position he earned $16.19 per hour. Accordingly, the claimant's current employment is not comparably paying work. Thus, in order to be eligible for working wage loss, he must demonstrate a good faith effort to look for suitable employment that is

comparably paying work, unless he is excused from this requirement. The staff hearing officer ("SHO") excused him from the requirement but did not analyze or explain why he is entitled to working wage loss in the absence of evidence of a good-faith search for comparably paying work.

{¶ 6} The magistrate concluded that, because the record before this court contains no employer contact sheets or other evidence that the claimant has searched for comparably paying work, then under Ohio Adm.Code 4125–1–01(D)(1)(c), the claimant is precluded from receiving working wage loss.

{¶ 7} The magistrate cited *Timken*, 99 Ohio St.3d 21, 2003-Ohio-2450, 788 N.E.2d 1037, in which the Supreme Court of Ohio explained:

"[I]n *some* situations, the commission may require a claimant with full-time employment to nevertheless continue looking for 'comparably paying work.'" *State ex rel. Yates v. Abbott Laboratories, Inc.*, 95 Ohio St.3d 142, 2002-Ohio-2003, 766 N.E.2d 956, ¶ 38. For regardless of the character of the work, "the overriding concern in all of these cases—as it has been since the seminal case of *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827—is the desire to ensure that a lower-paying position—regardless of hours—is necessitated by the disability and not motivated by lifestyle choice. And this is a concern that applies equally to regular full-time employment." Id. at ¶ 37.

(Emphasis sic.) Id. at ¶ 24.

{¶ 8} The *Timken* court then went on to explain that the approach to determining whether to excuse a search for comparably paying work is not formulaic, but broad:

In determining whether to excuse a claimant's failure to search for another job, we use a broad-based analysis that looks beyond mere wage loss. This approach was triggered by our recognition that "[w]age-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life—long after wage-loss compensation has expired." [*State ex rel.*] *Brinkman* [*v. Indus. Comm.*], 87 Ohio St.3d [171,] at 174, 718 N.E.2d 897.

In *Brinkman*, a job search was deemed unnecessary where the claimant secured a part-time job with a high hourly wage and a realistic possibility of being offered a full-time position. Conversely, in [*State ex rel.*] *Yates* [*v. Abbott Labs.*, 95 Ohio St.3d 142, 2002-Ohio-2003, 766 N.E.2d 956, ¶ 38], evidence of a good faith job search *was* required of a claimant with full-time employment who was making drastically reduced postinjury wages. We stressed in *Yates* that the claimant had voluntarily relocated to a place with a high rate of

unemployment and was grossly underutilizing her college degree and real estate license.

(Emphasis sic.)   Id. at ¶ 25–26.

{¶ 9} In the instant case, the magistrate concluded that the commission abused its discretion when it excused the claimant from the requirement of a good-faith search for comparably paying work without performing any analysis as to whether he is entitled to be excused from that requirement.   The magistrate went on to analyze whether the record warrants excusing the claimant from the requirement of a good-faith search for comparably paying work.   The magistrate noted that the claimant is not arguing that requiring a job search would force him to "leave a good thing," as in *Timken,* where the injured worker had worked for Timken Company for years and was working toward full pension benefits;  nor is he arguing that his security-guard position confers any particular benefit on him other than it offers work within his physical restrictions.   For this reason, the magistrate found that the commission's order is not supported by some evidence and that the commission abused its discretion in excusing the claimant from the requirement of a good-faith search for comparably paying work.

{¶ 10} In his objections, the claimant does not argue that the magistrate cited or applied the wrong case law;  rather, he argues that the magistrate applied the law to him incorrectly.   First, he argues that because it was his industrial injury that prevented him from returning to his former position, his current full-time job does not constitute a lifestyle choice, but a necessity.   Without any citation to authority therefor, he argues that the primary goal of the workers' compensation system is to get injured employees back to work.   He appears to argue that because he is back to work full-time, he should be exempt from the requirement that he search for comparably paying work.   But this position ignores the Supreme Court's directive that in some cases, even those who have secured full-time employment must search for comparably paying work in order to prove entitlement to working wage loss.   The claimant offers no evidence that justifies exempting him from that requirement, and we perceive none in the record.   His industrial injury necessitated his departure from his former position, but there is no evidence that it proximately caused his precipitous wage reduction.

{¶ 11} Next, the claimant points out that the SHO based his decision, in part, on the claimant's oral testimony at the hearing, which has not been transcribed. He argues that the magistrate's decision "penalizes the claimant for the Industrial Commission's failure to do a broad based analysis," and he apparently argues that his oral testimony would prove that he is entitled to an exemption from the requirement of a good-faith search for comparably paying work.   He argues that if we adopt the magistrate's decision, it will require claimants to always order

court reporters to transcribe wage-loss hearings to ensure that their testimony becomes part of the record.

{¶ 12} We disagree. In this case, the record contains a partial transcript of a March 7, 2007 deposition of the claimant taken in a companion case, in which he explained why he has not searched for comparably paying work since he obtained his current employment:

It's just that I got to be sure like security, I know that I'm not going to get stuck doing something I can't do with my hand and get fired. I don't want to have to go in there and say yeah, I can do this, and I can't.

See ¶ 31, infra. This is not the type of reason that justifies exemption from the job-search requirement in Ohio Adm.Code 4125–1–01(D)(1)(c), such as those that existed in *State ex rel. Timken v. Kovach*, 99 Ohio St.3d 21, 2003-Ohio-2450, 788 N.E.2d 1037 (long-held employment with the same employer, with almost full credit toward pension), and *State ex rel. Brinkman v. Indus. Comm.* (1999), 87 Ohio St.3d 171, 718 N.E.2d 897 (part-time job with a high hourly wage and a realistic possibility of being offered a full-time position in the near future).

{¶ 13} Next, the claimant objects to the magistrate's referring to a memorandum prepared by relator's counsel, in which counsel summarized the claimant's testimony before the SHO. He argues that this was improper, since there is no transcript or record of his hearing testimony and opposing counsel's summary is not competent as evidence. We agree that counsel's summary is not competent evidence of the claimant's hearing testimony, and we acknowledge that the magistrate refers to counsel's summary in his decision. However, we overrule this objection because our decision is not based, in whole or in part, upon counsel's summary of the claimant's testimony, and our review is independent and plenary.

{¶ 14} Finally, the claimant argues that the magistrate erred to the extent that he found that the claimant has not searched for other work at all. He argues that other portions of his deposition transcript demonstrate that he is registered with a job-placement agency and he looks in the newspaper for other employment possibilities. The result we reach today, however, is not based on any finding that the claimant has made *no attempt* to seek other employment. But we do find that he has failed to sustain his burden of proof of a good-faith search for *comparably paying work*.

{¶ 15} "All claimants seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein." Ohio Adm.Code 4125–1–01(C)(5). "Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position

sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact." Ohio Adm.Code 4125–1–01(C)(5)(d). Moreover, "[w]age loss statements shall be submitted on forms provided by the bureau of workers' compensation." Ohio Adm.Code 4125–1–01(C)(5)(e). There are no wage-loss statements in the record before us, and the claimant does not argue that he has submitted any. Without such statements, and absent any evidence that the claimant qualifies for an exemption from the requirement of a good-faith search for comparably paying work, we find that the commission's order is not based on some evidence and is an abuse of discretion.

{¶ 16} Having reviewed the claimant's objections and relator's memorandum in opposition thereto, considered the arguments of the parties, and independently appraised the evidence, we overrule claimant's objections and adopt the magistrate's decision as our own. Therefore, we issue a writ of mandamus ordering the commission to vacate its April 18, 2007 order granting the claimant's application for working wage loss compensation and to enter a new order denying the application.

Objections overruled;<br>writ of mandamus granted.

PETREE and BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third District Court of Appeals, sitting by assignment.

APPENDIX

IN MANDAMUS

{¶ 17} In this original action, relator, Deluxe Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order awarding respondent John C. Stanley ("claimant") R.C. 4123.56(B) wage-loss compensation beginning September 18, 2006, and to enter an order denying said compensation.

Findings of Fact

{¶ 18} 1. On June 16, 2004, claimant sustained an industrial injury while employed as a printing-press operator for relator, a self-insured employer under Ohio's workers' compensation laws.

{¶ 19} 2. The industrial claim (No. 04–841133) is allowed for the following injuries:

> Fracture mid proximal phalanx, hand-open right fifth finger; open right wrist; open wound hand-complicated right; open wound finger-complicated right fifth

finger; crushing injury of right hand; reflex sympathetic dystrophy, upper limb right; adhesive capsulitis shoulder right.

{¶ 20} 3. On September 18, 2006, claimant was examined by R. William McCue, M.D., who wrote:

John has previously had severe crush injury with open wounds of his left palm, small finger, fourth web and open fracture of the proximal phalanx of his small finger. He had surgery and then extensive therapy and rehab for the hand and wrist. He also had stretch and sprain injury of his right shoulder.

John reports he's continued to have weakness in his right hand grip and stiffness in his fingers. Not experiencing numbness. He has intermittent tightness and right shoulder pain.

**EXAM:** * * *

He has good range of motion of both hands and wrists but some stiffness in the fingers of his right hand with tightness at the DIP and PIP joints of the fingers. Unable to fully flex the fingers at the distal palmar crease but has some mild continued tightness in the intrinsic muscles of the right hand on Bunnell test.

His right shoulder motion is good on flexion-extension without pain. He also has full motion of the elbow and shoulder but sensation of tightness in the shoulder with motion.

3 x-ray views of the right hand and wrist, AP, lateral and oblique, dated 9/18/06, show moderate narrowing of the small joints of the fingers, thumb and basal joint, consistent with OA. The proximal phalanx fracture of the small finger is healed in good position.

* * *

**PLAN:** * * * His work restrictions include:

[One] No lifting overhead

[Two] 20 pounds lifting

[Three] Simple grasp with the right hand.

These restrictions are permanent.

{¶ 21} 4. On September 18, 2006, Dr. McCue completed a medical report form found on the back side of the C–140 application for wage-loss compensation. The form asks the examining physician to indicate the claimant's physical capacity by marking appropriate boxes aside preprinted queries. Dr. McCue indicated that claimant can sit, stand, and walk for eight hours during an eight-hour day. He cannot lift or carry over 20 pounds, but he can lift or carry up to 20 pounds occasionally. He cannot climb. He cannot use his right hand for fine manipulation in a repetitive manner. Dr. McCue wrote: "No reaching overhead." Dr.

McCue further indicated that claimant can work a 40–hour work-week. The restrictions are permanent.

{¶ 22} 5. The C–140 medical report form does not ask the physician to opine as to whether the claimant can return to his former position of employment.

{¶ 23} 6. Earlier, on September 17, 2006, claimant completed the C–140 application and indicated thereon that he was requesting wage-loss compensation. The C–140 asks the wage-loss applicant to provide information regarding his work history. Claimant was employed as a printing-press operator with relator since January 8, 1996, eventually earning $16.19 per hour. Beginning July 1, 2006, claimant was employed as a security guard earning $7.75 per hour. Beginning December 16, 2006, he was employed as a security guard for another security company also earning $7.75 per hour.

{¶ 24} 7. By letter dated September 27, 2006, relator denied the wage-loss application, explaining:

The claimant has failed to submit any employer contact sheets which are required by the Industrial Commission guidelines. Please note specifically, Ohio Administrative Code Section 4125–1–01(C)(5).

In the event your client has some employer contact sheets documenting his search for suitable employment within his restrictions that pay comparatively to his pay at Deluxe Corporation, please feel free to submit those to our office and we will further consider this application.

{¶ 25} 8. On March 15, 2007, a district hearing officer ("DHO") heard the wage-loss application. The hearing was not recorded. Following the hearing, the DHO issued an order denying the application:

The request for payment of Working Wage Loss compensation benefits for the period from 9/18/2006 through 2/22/2007 is denied. The Injured Worker has failed to present any evidence to establish a search for comparably paying employment, in accordance with the provisions of Ohio Administrative Code 4125–1–01(D)(1)(c), and the Supreme Court holding in *State ex rel. Honda Trans. Mfg. of Am., Inc. v. Indus. Comm.* (2002), 95 Ohio St.3d 95, 766 N.E.2d 133. All evidence on file with regard to this matter was reviewed and considered.

{¶ 26} 9. Claimant administratively appealed the DHO's order of March 15, 2007.

{¶ 27} 10. On April 18, 2007, a staff hearing officer ("SHO") heard claimant's appeal. The hearing was not recorded. Following the hearing, the SHO issued an order vacating the DHO's order and granting wage-loss compensation. The SHO's order explains:

The Hearing Officer finds that the claimant has returned to work other than his former position of employment. Claimant's former position of employment was press operator. Claimant's new position is security guard. The Hearing Officer further finds that as a result of the allowed conditions in the instant claim, the claimant has suffered a wage loss.

Therefore, it is ordered that wage loss compensation under ORC 4123.56(B) is awarded.

\* \* \*

Working Wage Loss is granted from:

[One] 09/18/2006 to 02/22/2007 inclusive and to continue upon submission of proof of wage loss, but in no event to exceed the statutory maximum of 200 weeks.

The Hearing Officer, in making this finding has relied upon the following evidence:

[One] Dr. McCue, claimant's physician's C–140's on file indicating the Injured Worker has restrictions which prohibit him him [sic] from returning to his former position of employment.

[Two] Wage statements[.]

[Three] Claimant's testimony and job search records.

{¶ 28} 11. The record before this court does not contain so-called "job search records," that the SHO states were relied upon.

{¶ 29} 12. Relator administratively appealed the SHO's April 18, 2007 order.

{¶ 30} 13. In support of the appeal, relator's counsel submitted a memorandum. In the memorandum, relator's counsel describes the facts of the case:

John Stanley was injured when he was employed at Deluxe Corporation on June 16, 2004. Mr. Stanley suffered injuries to his right hand and right shoulder. During Mr. Stanley's recuperation from his injuries, the department in which he worked at Deluxe was closed and the employees were laid off, including Mr. Stanley. The laid off employees (including Mr. Stanley) did have an opportunity to bid on jobs at Deluxe Corporation, but Mr. Stanley was not successful in his bid on another job at Deluxe. Accordingly, when Mr. Stanley's treating physician released him to return to work, the self insured employer procured vocational services to assist Mr. Stanley in finding a job. Mr. Stanley eventually did find employment working as a security guard, working 40 hours per week. These facts are not in dispute. At both the district and staff level hearings, Mr. Stanley agreed with the above-referenced facts.

Once Mr. Stanley began working as a security guard, 40 hours per week, he stopped looking for suitable, comparable paying employment. \* \* \*

At the district level hearing, the injured worker testified to the following information:

- He had not submitted any applications with prospective employers since September 1, 2006.
- He had not mailed any resumes or applications to any employers since September 1, 2006.
- He had not submitted any resumes or applications on-line and, in fact, does not own a computer since September 1, 2006.
- He had not been to the Unemployment Office since September 1, 2006.
- He had not completed any paperwork or documents that would substantiate any contacts with potential employers since September 1, 2006.

\* \* \*

At the staff level hearing on April 18, 2007, the claimant testified consistent with his previous testimony at the district level hearing. In fact, the claimant's deposition was taken on March 7, 2007 in a companion case. \* \* \* Throughout the plaintiff's deposition and in the relevant excerpts attached hereto, Mr. Stanley truthfully testified that he had not looked for any other work since he began to work 40 hours per week for the security company for whom he was working. He admitted that he had not been to unemployment, did not look for jobs on-line, and had not submitted any resumes or applications to prospective employers.

{¶ 31} 14. Relator attached a partial copy of the March 7, 2007 deposition transcript. The transcript records the following exchange:

Q. Since July of 2006 have you submitted any applications to any employer, any potential employer?

A. No. No, I don't think so that I have.

\* \* \*

Q. Can you identify anyone else that you've talked to about potential employment since last July?

A. Right offhand, no, I can't. Like I said, I look in the paper and stuff. It's just that I got to be sure like security, I know that I'm not going to get stuck doing something I can't do with my hand and get fired. I don't want to have to go in there and say yeah, I can do this, and I can't.

{¶ 32} 15. On May 8, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 18, 2007.

{¶ 33} 16. On September 21, 2007, relator, Deluxe Corporation, filed this mandamus action.

Conclusions of Law:

{¶ 34} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 35} The commission awarded wage-loss compensation beginning September 18, 2006, while claimant was employed as a security guard earning $7.75 per hour. This compares to his former position of employment where he earned $16.19 per hour as a printing-press operator. While claimant apparently returned to full-time employment as a security guard, he undisputedly did not return to comparably paying work. The resultant wage differential was the basis for the wage-loss award. It is undisputed that claimant did not conduct a job search for comparably paying work, nor did he search for higher paying work after he obtained his position as a security guard. Moreover, contrary to the statement by the SHO, he did not submit job-search records.

{¶ 36} Ohio Adm.Code 4125–1–01 sets forth the commission's rules applicable to the adjudication of applications for wage-loss compensation.

{¶ 37} Ohio Adm.Code 4125–1–01(A) provides the following definitions:

(7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.

(8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.

(9) "Working wage loss" means the dollar amount of the diminishment in wages sustained by a claimant who has returned to employment which is not his or her former position of employment. However, the extent of the diminishment must be the direct result of physical and/or psychiatric restriction(s) caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.

Ohio Adm.Code 4125–1–01(D) provides:

The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied. * * *

In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:

(1) The claimant's search for suitable employment.

* * *

(b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.

(c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work[.] * * * A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *

{¶ 38} Through case law, the Supreme Court of Ohio has set forth a broad-based analysis for determining whether to excuse a claimant's failure to search for a better paying job when the job the claimant found creates a wage deferential with respect to the former position of employment. That broad-based analysis and the caselaw from which it is derived is succinctly set forth in *State ex rel. Timken Co. v. Kovach,* 99 Ohio St.3d 21, 2003-Ohio-2450, 788 N.E.2d 1037, ¶ 19–28:

The purpose of wage-loss compensation is to return to work those claimants who cannot return to their former position of employment but can do other work. Ideally, that other work generates pay comparable to the claimant's former position. Where it does not, wage-loss compensation covers the difference.

Receipt of such compensation hinges on whether there is a causal relationship between injury and reduced earnings, more specifically, on a finding that "claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a lifestyle choice." *State ex rel. Jones v. Kaiser Found. Hosp. Cleveland* (1999), 84 Ohio St.3d 405, 407, 704 N.E.2d 570.

The requirement of a causal relationship is often satisfied by evidence of an unsuccessful search for other employment at the preinjury rate of pay. *State ex rel. Ooten v. Siegel Interior Specialists Co.* (1998), 84 Ohio St.3d 255, 256, 703 N.E.2d 306. Because claimant allegedly refused a comparably paying position at Timken and did not search for another job, Timken asserts that claimant is ineligible for wage-loss compensation. Timken's position is untenable.

Relying on the Ohio Administrative Code, Timken asserts that a job search is mandatory. We have said otherwise. In *Ooten,* we indicated that a job search is "not universally required." Id. And in *State ex rel. Brinkman v.*

*Indus. Comm.* (1999), 87 Ohio St.3d 171, 718 N.E.2d 897, we excused the claimant's lack of a job search when he had secured lucrative, albeit part-time, employment with a realistic possibility that it would change to full-time.

*Brinkman* and *Ooten* respectively involved part-time employment and self-employment-two categories of employment subject to enhanced scrutiny "to ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices." *Brinkman,* 87 Ohio St.3d at 173, 718 N.E.2d 897.

The employment at issue herein is full-time, not part-time, which lessens-but does not eliminate-these concerns. Indeed, "in *some* situations, the commission may require a claimant with full-time employment to nevertheless continue looking for 'comparably paying work.' " *State ex rel. Yates v. Abbott Laboratories, Inc.,* 95 Ohio St.3d 142, 2002-Ohio-2003, 766 N.E.2d 956, ¶ 38. For regardless of the character of the work, "the overriding concern in all of these cases-as it has been since the seminal case of *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827-is the desire to ensure that a lower-paying position-regardless of hours-is necessitated by the disability and not motivated by lifestyle choice. And this is a concern that applies equally to regular full-time employment." Id. at ¶ 37.

In determining whether to excuse a claimant's failure to search for another job, we use a broad-based analysis that looks beyond mere wage loss. This approach was triggered by our recognition that "[w]age-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life-long after wage-loss compensation has expired." *Brinkman,* 87 Ohio St.3d at 174, 718 N.E.2d 897.

In *Brinkman,* a job search was deemed unnecessary where the claimant secured a part-time job with a high hourly wage and a realistic possibility of being offered a full-time position. Conversely, in *Yates,* evidence of a good-faith job search *was* required of a claimant with full-time employment who was making drastically reduced postinjury wages. We stressed in *Yates* that the claimant had voluntarily relocated to a place with a high rate of unemployment and was grossly underutilizing her college degree and real estate license.

In the case before us, our broad-based analysis allows us to consider the fact that claimant's current employment is with Timken-the same company at which he was injured. This militates against requiring a job search because claimant has some time invested with Timken. He has years towards a company pension. Moreover, his longevity may have qualified him for additional weeks

of vacation or personal days. Much of this could be compromised if claimant were to leave Timken for a job elsewhere.

*Brinkman* held that it was inappropriate to ask a claimant to "leave a good thing" solely to narrow a wage differential. Given claimant's years of service with Timken, the benefits he receives there outweigh a higher-paying position he might be able to get at a new company. Thus, we apply *Brinkman*'s rationale and preserve claimant's eligibility for wage-loss compensation.

{¶ 39} Here, the SHO awarded wage-loss compensation beginning September 18, 2006, even though it is undisputed that claimant failed to submit the wage-loss statements required by Ohio Adm.Code 4125–1–01(C)(5):

All claimants seeking or receiving working or non-working wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.

(a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.

(b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss application and/or any subsequent request for wage loss compensation in the same claim.

(c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's [*sic*] compensation or the self-insured employer during the period when wage loss compensation is received.

(d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.

(e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.

{¶ 40} Also, the SHO's order obviously lacks a *Timken*-type broad-based analysis that might excuse a failure to submit the wage-loss statements required by Ohio Adm.Code 4125–1–01(C)(5).

{¶ 41} Clearly, the SHO's award of wage-loss compensation cannot stand as presently written.

{¶ 42} The question here is whether the lack of a *Timken*-type broad-based analysis in the SHO's order is grounds for a writ of mandamus ordering the commission to conduct a broad-based analysis to determine whether claimant can be excused from his failure to conduct a job search.

{¶ 43} Here, citing *Timken* and related cases, claimant argues that the commission had evidence upon which it could have determined, under a broad-based analysis, that claimant was excused from a job search following his obtaining employment as a security guard:

> In this particular case the Respondent, is fifty-one years of age, has an eleventh grade education, worked as a press operator most of his life and as a press operator for the Relator for approximately eight years before his injury in 2004. The 2004 injury injured his right hand, arm and shoulder. The injury has left the claimant with permanent restrictions. The evidence in the record supports that the claimant is not to use his right hand on a repetitive basis, is not to use his right arm for overhead reaching, is not to do anything other than simple grasping with the right hand and is not to lift more than twenty pounds.
> * * *
> The facts further show that after the Respondent was released by his Doctor to return to full time employment the employer was not able to offer any employment within his light duty restrictions. * * * Subsequently, the Self Insured Employer got the claimant involved in a vocational rehabilitation program. * * * As a result of that vocational rehabilitation program the Respondent secured employment as a security guard on a full time basis beginning in December of 2005. He continues to work that job at the present.
> * * *
> * * * The medical evidence in the file supports an argument that he cannot return to his former position of employment. The Employer could not offer work within his light duty restrictions. A broad based analysis would require the Industrial Commission to consider exactly what employment opportunities are out there for the Respondent. As discussed in his deposition testimony the Respondent did inquire about other positions of employment. However, his over-riding concern was that he did not want to give up his current job as he knows he can perform that job with his physical limitations and his concern that he might get into some other employment where he couldn't handle the tasks and would be fired.

{¶ 44} Claimant does not argue that requiring him to conduct a job search would be asking him to "leave a good thing," i.e., his security guard job. That is,

claimant speaks of no benefits of his security guard job beyond the $7.75 per hour wage that he earns.  See *State ex rel. Internatl. Truck & Engine Corp. v. Indus. Comm.*, Franklin App. No. 05AP–1337, 2006-Ohio-6255, 2006 WL 3438660.  However, claimant expresses his concern that he might find employment that would ultimately prove to be too much for him to perform.

{¶ 45} In the magistrate's view, claimant's aversion to the risk of finding better employment does not provide a basis for a *Timken*-type broad-based analysis that could conceivably result in a determination that a job search was not required.  Finding better employment naturally involves some risk taking—even the risk of being unsuccessful at the new job.

{¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its April 18, 2007 SHO's order awarding wage-loss compensation, and to enter an order denying said compensation.