[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 142.]

THE STATE EX REL. YATES, APPELLANT, *v*. ABBOTT LABORATORIES, INC. ET AL., APPELLEES.

[Cite as *State ex rel. Yates v. Abbott Laboratories, Inc.*, 2002-Ohio-2003.]

*Workers' compensation—Industrial Commission's denial of wage-loss compensation not an abuse of discretion, when.*

(No. 2000-2095—Submitted February 26, 2002—Decided May 8, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-37.

————————————

**Per Curiam.**

{¶1} Appellant-claimant, Leatrice A. Yates, joined appellee Abbott Laboratories, Inc., as a cost clerk in 1974. Claimant was considered an exemplary employee and rose through the ranks accordingly. Continuing to work full-time, she earned her bachelor's degree in business administration and eventually became a senior production inventory scheduler at the Ashland, Ohio plant.

{¶2} Although only in her late forties, claimant and her husband had had serious discussions about their eventual retirement. They had even scouted out a location—Murray, Kentucky. They chose Murray for several reasons:

{¶3} "[W]e wanted to retire to an area that had a small college town close to a bigger town where you could go and have theater or music performances, some place nice to go to dinner if you wanted to do that, and Murray fit that criteria. We wanted it to be a town of less than 20,000. We did not want to live in a big city. And we like western Kentucky. It's very pretty there."

{¶4} In 1997, while still at Abbott, claimant developed an allergic reaction to a chemical substance in the workplace. She was eventually diagnosed with acute allergic conjunctivitis. On February 5, 1998, attending opthamologist Harold A.

Ballitch II recommended a thirty-day leave of absence to resolve the problem. Shortly thereafter, she began receiving compensation for temporary total disability.

{¶5} In March 1998, claimant and her husband put their house up for sale in Ashland. Claimant conceded that the decision was not motivated by her work-related disability but stemmed instead from what they perceived as timing conducive to getting the highest possible sale price for their house. The house sold in June 1998, and claimant moved to Murray. Coincidentally, on June 29, Dr. Ballitch permanently restricted claimant from returning to the Ashland plant.

{¶6} At the time claimant left Abbott, she was making $65,000 a year. On July 24, 1998, claimant began working for Century 21 Real Estate in Murray. Despite having a Kentucky real estate license, claimant worked in a strictly clerical capacity for $5.15 an hour.

{¶7} On August 26, 1998, she moved appellee Industrial Commission of Ohio for wage-loss compensation. On January 22, 1999, a commission district hearing officer ("DHO") denied the request, making the following findings:

{¶8} (1) From June 19, 1998, to July 23, 1998, claimant made no job search;

{¶9} (2) From July 24, 1998, to January 17, 1999, claimant did not look for comparably paying work;

{¶10} (3) From January 18, 1999, to January 22, 1999, claimant's search for comparably paying work was inadequate.

{¶11} Claimant's appeal was heard on February 25, 1999. There she argued that (1) it was unrealistic to expect her to immediately step into a second job making as much as she did after years at Abbott and (2) the number of employers contacted was adequate, given the scarcity of employers in the Murray area.

{¶12} A staff hearing officer ("SHO") agreed in part with claimant's first assertion but held that claimant was expected to pursue a position more commensurate with her education, experience, and earning potential, despite her job with Century 21.

Because she did not, the SHO found a failure to seek suitable and comparably paying work as required by Ohio Adm.Code 4125-1-01(D)(1)(c).

{¶13} Responding to claimant's second point, the SHO stressed that it was claimant's decision to move to Murray. If job opportunities were less plentiful, claimant could not shift the consequences of her decision to Abbott. Wage-loss compensation was accordingly denied.

{¶14} Claimant requested an appeal to the commission pursuant to R.C. 4123.511(E), alleging both error of material fact and newly discovered evidence, among other things. As to the former, claimant complained that the 10.3 percent unemployment figure cited by the SHO for Murray was too high. She also presented evidence that raised the total number of job contacts to thirty-three. The appeal, however, was denied.

{¶15} Claimant responded to that denial with a motion for reconsideration, reasserting the same deficiencies. Reconsideration was denied.

{¶16} Having been denied reconsideration, claimant started the process anew on April 29, 1999, by filing a second motion for wage-loss compensation, for losses since January 23, 1999. That motion was denied by a DHO on August 27, 1999. The DHO found that the issue of wage-loss compensation through February 25, 1999 (the date of the previous SHO order), was res judicata, and that the erroneous unemployment figure for Murray was insufficient to invoke continuing jurisdiction. From February 25, 1999, forward, wage-loss compensation was denied for either lack of *any* job search or lack of a good-faith effort to find comparable employment. As to the latter, the DHO found that claimant's employment contacts were either (1) insufficient in number, ranging from a low of three per week to a high of eight or (2) for jobs that were clearly not paying comparably to the Abbott job. The DHO also criticized claimant for limiting her efforts to submitting resumes in response to newspaper ads.

{¶17} On November 19, 1999, an SHO issued the most detailed denial of all. The res judicata determination was affirmed. Turning to wage loss thereafter, the SHO elaborately discussed the criteria for wage-loss compensation contained in Ohio Adm.Code 4125-1-01. Specific findings included the following:

{¶18} (1) Claimant's choice to do menial clerical work rather than use her real estate license represented a failure to use her best efforts to reduce her wage loss;

{¶19} (2) Claimant's subsequent $10 per hour clerical position with Paschall Truck Lines was an underutilization of skills and not comparably paying work;

{¶20} (3) Claimant made an insufficient number of job contacts. Claimant's one hundred twenty-six contacts for the thirty-eight weeks at issue averaged three per week;

{¶21} (4) Several of claimant's contacts were for clerical jobs that would not match claimant's prior income or skills or even her current income.

{¶22} The SHO therefore concluded that "the quality of claimant's job contacts does not demonstrate her 'best attempts' to eliminate her wage loss."

{¶23} Further appeal was refused.

{¶24} Claimant then sought a writ of mandamus from the Court of Appeals for Franklin County, making five arguments for ordering the commission to grant wage-loss compensation. In a well-reasoned report, the appellate court's magistrate rejected each argument. The court of appeals adopted that report, prompting claimant's appeal as of right to this court.

{¶25} Claimant seeks wage-loss compensation under R.C. 4123.56(B), which, if she prevails, would entitle her to up to two-thirds of the difference between pre- and postinjury earnings. To assist review, we have divided the disputed period into three segments: (1) January 23, 1999, through February 25, 1999; (2) February 26, 1999, through June 4, 1999; and (3) June 5, 1999, through November 19, 1999. For the reasons to follow, the court of appeals' judgment is affirmed in its entirety.

1. January 23, 1999, through February 25, 1999

**{¶26}** This is the disputed period declared res judicata by the second set of hearing officers. Claimant asserts that continuing jurisdiction was warranted to reopen the denial of compensation for this period for two reasons: (1) mistake of fact and (2) newly discovered evidence. Neither assertion has merit.

**{¶27}** Mistake of fact is a basis for reopening a prior decision. *State ex rel. B & C Machine Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 538, 605 N.E.2d 372. Logic, however, dictates that the mistake should be one relevant to the outcome. Claimant makes much of the first DHO's citation of a 10.3 percent unemployment figure for the Murray area, when the actual figure was about half that. As every subsequent hearing officer held, however, that percentage figure was not the basis upon which compensation was denied. Indeed, the first SHO, in acknowledging the error, commented that the higher figure actually benefited claimant in that it better supported her assertion that her job contacts were low because the pool of potentially hiring employers was low.

**{¶28}** This ties in with a larger, more important point. In defending herself against charges that she contacted too few employers, it was claimant who raised the subject of the potential employment pool. The first SHO on February 25, 1999, responded that if the pool of potential hirers was limited, then it was a consequence of claimant's decision to relocate, and the consequences of her decision could not be cast upon Abbott. This logic is sound and applies regardless of whether the unemployment rate was five percent or ten percent. Therefore, citation of a 10.3 percent unemployment rate was not a material mistake, and the commission did not abuse its discretion in declining to revisit the matter on that basis.

**{¶29}** Claimant also asserts a jumbled evidentiary challenge. Her originally asserted basis—newly discovered evidence of job contacts—was properly rejected. Claimant was the one who made the job contacts. That she subsequently remembered other contacts does not constitute evidence that could not have been discovered or presented earlier.

**{¶30}** Claimant also asserts that later submitted affidavits and the vocational report of Dr. Beal Lowe were not considered. There is no evidence, however, of failure to consider them—a point claimant very reluctantly concedes. Where the commission lists only the evidence relied on, the omission of an item from that list does not show failure to consider it. In contrast, omission of an item from a list of evidence merely considered, as opposed to actually relied on, does imply failure to consider. *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 631 N.E.2d 1057.

**{¶31}** Claimant cites *State ex rel. Thorn v. Indus. Comm.* (2000), 88 Ohio St.3d 417, 727 N.E.2d 875, in which failure to consider evidence was assumed based on the "tenor of the order" as well as overt evidence of omission. In *Thorn*, the order specifically criticized the lack of any evidence of a causal relationship between the claimed disability and allowed condition, when, in fact, such evidence was presented to the commission. We have no similar declaration here, simply claimant's belief that since the commission found a contrary vocational report persuasive, it must not have looked at Lowe's report. This is an insufficient justification for assuming failure to consider the report.

**{¶32}** Accordingly, claimant's evidentiary challenges to the commission's refusal to reconsider and its concomitant denial of wage-loss compensation are rejected.

2. February 26, 1999, through June 4, 1999

**{¶33}** This is the period during which claimant worked a minimum-wage clerical job for Century 21. The commission denied wage-loss compensation after finding—for a number of reasons—that claimant was not using her best efforts to minimize her wage loss.

**{¶34}** Claimant puts forth several reasons why her job search was adequate— that the number of contacts was adequate given the job market, that only entry-level employment was realistic, etc. The bottom line, however, is that we need not look

even as far as outside contacts to sustain the commission's decision. We need look no further than Century 21 itself. As pointed out by the second SHO, claimant had a real estate license that she declined to use, choosing instead to do clerical work. Claimant does not dispute this assertion, nor does she dispute the assertion in the August 26, 1999 report of Denise Buccini, a vocational consultant, that she could have made more as a real estate agent for Century 21 than as a clerical worker "if she were motivated to work the schedule required to be successful in this field." Thus, even within her own workplace, claimant was not making her best effort to maximize her wages. The commission did not, therefore, abuse its discretion in denying wage-loss compensation over this period.

3. June 5, 1999, through November 19, 1999

{¶35} On June 5, 1999, claimant began working for $10 an hour as a clerical worker for Paschall Truck Lines. Once again, within the different assertions raised— many irrelevant—there is a bottom line: Did the commission abuse its discretion in finding that three job contacts per week were insufficient for a claimant who was already working full-time?

{¶36} In reality, the issue comprises two questions: (1) Is a job search necessary and (2) if so, what is required? We have not been confronted with the first question within the context of regular full-time employment. What other cases have so far taught, however, is that the question is not amenable to hard-and-fast rules—it is very dependent on circumstances. For example, securing full-time employment has not excused a job search where the full-time job involved self-employment. *State ex rel. Cash v. Indus. Comm.* (2000), 88 Ohio St.3d 306, 725 N.E.2d 657; *State ex rel. Ooten v. Siegel Interior Specialists Co.* (1998), 84 Ohio St.3d 255, 703 N.E.2d 306. Conversely, lucrative part-time employment with a verifiable and realistic opportunity of advancement either in position or hours has excused a further job search. *State ex rel. Brinkman v. Indus. Comm.* (1999), 87 Ohio St.3d 171, 718 N.E.2d 897.

**{¶37}** Certainly there are distinctions—particularly as to the former—between the cited cases and ours. Self-employment brings in variables not applicable to regular full-time employment. Nevertheless, what is the overriding concern in all of these cases—as it has been since the seminal case of *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827—is the desire to ensure that a lower-paying position—regardless of hours—is necessitated by the disability and not motivated by lifestyle choice. And this is a concern that applies equally to regular full-time employment.

**{¶38}** From this perspective, we find that in some situations, the commission may require a claimant with full-time employment to nevertheless continue looking for "comparably paying work." That is the logic the commission used here. There is, moreover, no evidence that would put this case within the parameters of *Brinkman*. There is nothing to suggest that claimant's job with Paschall offered a realistic possibility of advancement that would reduce her wage loss. Thus, the commission claims, it did not abuse its discretion in requiring claimant to maintain a contemporaneous job search.

**{¶39}** Claimant does not really disagree with this proposition, but instead vigorously contests the conclusion that her search was inadequate and, therefore, in bad faith. The commission, through its second set of hearing officers, cited three flaws in claimant's search efforts: (1) the number of weekly contacts, (2) the contact method, and (3) the types of job sought.

**{¶40}** The second basis is clearly the weakest. The commission criticized claimant for responding only to newspaper ads and not applying in person or by phone. The commission forgets, however, that personal contact during a prospective employer's business hours is almost impossible when claimant is employed elsewhere during those same hours. This criticism is, therefore, unjustified.

**{¶41}** The other two deficiencies elicit the same response from claimant—that given the size and character of the Murray job market, her efforts were adequate. This

8

defense, however, is hampered by the same problem noted earlier—claimant chose to relocate to Murray. If opportunities are sparse or beneath her abilities, claimant cannot, in essence, hold Abbott accountable. Claimant has asserted no unforeseen change since her arrival that turned a once thriving job scene sour. There is no indication that the Murray job market was any different before relocation than after. Claimant must therefore accept the consequences of moving into the Murray job market, and the commission did not abuse its discretion in finding three contacts per week inadequate.

**{¶42}** Claimant criticizes the second SHO's suggestion that claimant expand her job search beyond a fifty-mile radius of Murray. Claimant makes allegations of an unconstitutional infringement on her right to travel or relocate, but none holds true. The SHO did not pronounce a hard-and-fast rule pertaining to search radii. The SHO simply made this observation in conjunction with his finding that when a claimant's postinjury relocation is not motivated by the industrial injury, the claimant must assume the job-related consequences of that move, including the possibility that a more expansive search may be required. No more should be read into the SHO's statement.

**{¶43}** For all of these reasons, denial of wage-loss compensation over this period was not an abuse of discretion.

**{¶44}** Finally, in claimant's proposition five, she criticizes the commission for failing to consider Ohio Adm.Code 4125-1-01(F)(3), which permits reduced wages when a partial voluntary limitation of earnings has been found. Claimant, however, did not raise this argument below, and it is therefore waived.

**{¶45}** The commission produced four meticulously reasoned orders supporting its denial of wage-loss compensation. The reasoning contained in each was sound, warranting the court of appeals' judgment that upheld them.

Judgment affirmed.

MOYER, C.J., F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and PFEIFER, JJ., concur in part and dissent in part.

Resnick, J., not participating.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶46} I concur with the majority opinion except with respect to the June 5, 1999, to November 19, 1999 time period. My review of the record does not reveal any inadequacy in Yates's search for comparably paying work during that period.

{¶47} Admittedly, this determination is a close call. Yates's decision to move to rural Kentucky undeniably hampered her efforts to find a comparably paying job. However, she found a full-time job that pays well for the area and continued searching for a better-paying job. Further, the Ohio's workers' compensation system was not designed to prevent workers eligible for compensation from moving within or without Ohio. Such a restriction would infringe on the constitutional right to travel.

{¶48} I conclude that Yates's effort to find a comparably paying job was adequate during the June 5, 1999, to November 19, 1999 time period, given her full-time employment status and the limited job market. Accordingly, I concur in part and dissent in part.

DOUGLAS, J., concurs in the foregoing opinion.

_____

Larrimer & Larrimer and Terrence W. Larrimer, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., Elizabeth T. Smith and Randall W. Mikes, for appellee Abbott Laboratories, Inc.

Betty D. Montgomery, Attorney General, and Cheryl J. Nester, Assistant Attorney General, for appellee Industrial Commission of Ohio.

_____