OPINION
{¶ 1} Relator, Mary E. Jackson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied relator's application for working wage-loss *Page 2 
compensation, and ordering the commission to find that she is entitled to that compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, which is appended to this opinion, and recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision, asserting the following two specific objections: (1) the magistrate erred when she concluded that relator was required to continue a job search in order to qualify for wage-loss compensation, even though she was working full time plus overtime; and (2) the magistrate erred when she dismissed relator's argument that relator's longevity of government employment was the basis for her high pre-injury earnings.
 {¶ 3} With regard to relator's first objection, relator argues that, because she worked 40 hours per week and an average of 5.8 overtime hours per week in her new employment, she was not required to continue a job search. Receipt of wage-loss compensation hinges on whether there is a causal relationship between injury and reduced earnings; more specifically, on a finding that claimant's job choice was motivated by an injury induced unavailability of other work and not simply a lifestyle choice. State ex rel. Jones v. Kaiser Found. Hosp.Cleveland, 84 Ohio St.3d 405, 407, 1999-Ohio-469. In order to ensure the causal relationship between an injured worker's wage diminishment and his industrial injury, Ohio Adm. Code 4125-1-01(D)(1)(c) provides that "[a] good faith effort to search for suitable employment which is comparably paying work is required * * * *Page 3 
of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work."
 {¶ 4} "Comparably paying work" is defined as "suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment." Ohio Adm. Code 4125-1-01(A)(8). In the present case, relator's new employment with a temporary agency is full time and pays her $8 per hour, with the possibility of overtime pay of $12 per hour, while her former position as a deputy sheriff paid her approximately $23 per hour. Therefore, relator's current employment clearly does not constitute comparably paying work. Thus, in order to be eligible for working wage loss, relator was required to demonstrate a good-faith effort to look for suitable employment that was comparably paying work, unless she was excused from this requirement.
 {¶ 5} Relator argues that she was not required to continue to look for comparably paying work after she began her new employment because she was working an average of 45.8 hours per week in her new employment. InState ex rel. Timken Co. v. Kovach, 99 Ohio St.3d 21, 2003-Ohio-2450, the Supreme Court of Ohio explained that "in some situations, the commission may require a claimant with full-time employment to nevertheless continue looking for `comparably paying work.'" (Emphasis sic.) Id. at ¶ 24, citing State ex rel. Yates v. Abbott Laboratories,Inc., 95 Ohio St.3d 142, 2002-Ohio-2003, at ¶ 38. The court went on to explain that, the overriding concern in wage-loss cases is the desire to ensure that a lower-paying position, regardless of hours, is necessitated by the disability and not motivated by lifestyle choice, and this is a concern that applies equally to regular full-time employment. Id., citing Yates, at ¶ 37. Therefore, merely because *Page 4 
relator was working full time did not automatically alleviate her of the responsibility to search for comparably paying work, and we must reject relator's contention insofar as she argues she was excused from her search based solely on working full time and some overtime.
 {¶ 6} Relator also contends that the magistrate's failure to state a definite amount of time she was required to spend searching for work or a definite number of employers she was required to contact each week demonstrates the flaw in her reasoning. Relator asserts, without citation, that the magistrate and commission must clearly delineate the amount of time a claimant must spend looking for employment or the number of employer contacts she must make to constitute a good-faith search for comparably paying work. However, the court in Timken
explained that the approach to determining whether to excuse a search for comparably paying work is not formulaic, but broad. The court found that, in determining whether to excuse a claimant's failure to search for another job, a court must use a broad-based analysis that looks beyond mere wage loss. Timken, at ¶ 25. Because wage-loss compensation does not last forever and ends after 200 weeks, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. Id. Although the number and character of job contacts are factors in determining the adequacy of a job search, adequacy must be determined on a case-by-case basis. Jones, supra, at 407.
 {¶ 7} Because the analysis of whether a claimant should be excused for failing to search for comparably paying work must be flexible and broad, and is subject to review on a case-by-case basis, we cannot find any error solely based upon the magistrate's or commission's failure to definitively define what number of hours or what number of *Page 5 
potential employers would constitute a good-faith search for comparably paying work. For these reasons, we find this objection without merit.
 {¶ 8} Relator argues in her second objection that the magistrate erred when she dismissed relator's argument that relator's longevity in her former employment was the main basis for her high pre-injury earnings. Relator asserts that her $23 per hour rate of pay as a deputy sheriff was predicated only upon her longevity of 20 years of governmental employment, and there was no evidence that she had unique skills or knowledge that could produce comparably paying work. Thus, relator argues, it was unrealistic to expect her to obtain comparably paying work when there was no evidence that she acquired unique vocational skills or knowledge in her previous employment that would have transferred to another job or aided her in obtaining a comparably paying job, as well as the fact that she is limited by permanent physical restrictions.
 {¶ 9} This court was faced with an analogous set of circumstances inState ex rel. Bishop v. Indus. Comm., Franklin App. No. 04AP-747,2005-Ohio-4548. In Bishop, the claimant sought wage-loss compensation after suffering injuries while working for a car manufacturer. After reaching maximum medical improvement, the claimant worked as a car salesman at two automobile dealerships. The commission ultimately determined that, because the claimant failed to engage in a job search once he began work as a car salesman, the requirement of a good-faith job search was not waived.
 {¶ 10} In a claimant's action in mandamus, this court first noted that a return to full-time employment does not automatically eliminate a claimant's duty to search for comparably paying work. However, we also noted that it was equally true that a job search is not mandatory, and, under certain circumstances, a claimant's failure to *Page 6 
continue to seek employment will be excused. Id. at ¶ 12. The overriding concern, we stated, was the desire to ensure that a lower-paying position, regardless of hours, is necessitated by the disability and not motivated by lifestyle choice. Id., citing Timken, at ¶ 24, quotingYates, supra, at ¶ 37. To determine whether the wage loss amounts to a voluntary limitation should be determined based on the enumerated factors of physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence, and availability of jobs, and not based simply on a requirement for a continued diligent search by claimant after completion of his normal daily work schedule. Id. at ¶ 13, citing State ex rel. Brinkman v.Indus. Comm., 87 Ohio St.3d 171, 173-74, 1999-Ohio-320.
 {¶ 11} With regard to the specific claimant in Bishop, we concluded that the commission improperly precluded him from wage-loss compensation based solely on his failure to conduct a job search while he was employed full time as a car salesman. We stated the analysis should have gone beyond the mere wage loss and investigated other factors to determine whether the wage disparity was voluntary in the sense that it was motivated by lifestyle choice. Id. at ¶ 17. We found there was no evidence in the record to support the conclusion that the claimant accepted and continued in his employment as a car salesman as a personal lifestyle choice. Id. We also pointed out there was no indication that he was voluntarily or grossly underemployed. In support, we cited evidence that the claimant had only a high school diploma at the time of his injury, thereby limiting the scope and quality of jobs available, and the fact that, once employed, the claimant worked in excess of 40 hours per week and took advantage of any opportunity to improve *Page 7 
his skills. Id., at ¶ 18. Moreover, we found that the claimant was continuing to reduce or eliminate his wage loss by experience, training, and hard work. Id.
 {¶ 12} We find Bishop instructive in our current analysis. In the present case, the record is wholly devoid of evidence that relator's second job earning significantly less money was motivated by lifestyle choice. Rather, it appears that several factors contributed to relator's inability to obtain comparably paying work. Relator suffered physical limitations based upon her allowed claim, including restrictions on bending and lifting, thereby limiting possible jobs. Further, like the claimant in Bishop, relator had only a high school degree, a G.E.D., at the time of the injury, which also limited the scope and quality of jobs available. Relator also has limited training. Relator's sole work experience since 1980 has been her job as a deputy sheriff. Although she possesses skills and knowledge obtained in her prior employment, many of these skills are not specifically transferable to vocations outside of the law enforcement field. Relator's duties in her prior employment were very narrow, and in her 20 years as a police officer, she only performed two jobs, housing inmates in the county jail and slating and releasing inmates.
 {¶ 13} Also relevant to our analysis is that relator, like the claimant in Bishop, regularly works overtime in her present job, up to 18 hours per week, thereby demonstrating her motivation to earn income. She also receives "time-and-a-half" for overtime pay. Importantly, the record does not indicate or suggest relator was grossly underemployed. Rather, the record suggests that relator made a substantial effort to find comparably paying employment, and the only employment she could obtain was her current position. Also similar to the claimant inBishop, relator's wages have increased since beginning the second job, thereby reducing her wage loss. The evidence *Page 8 
demonstrated that relator received a raise after 18 months. In addition, relator has also continued training at her new job and has learned new job skills, and she has applied for higher paying positions within the company, which again shows her motivation to reduce her wage loss amount.
 {¶ 14} We find relator's specific circumstances relieved her of her duty to continue searching for comparably paying work once she obtained her current employment. The present facts convince the court that relator's lower-paying position was necessitated by her disability and not motivated by lifestyle choice. Relator's wage loss was not a voluntary limitation, and her subsequent employment was consistent with her physical impairment, age, employment history, vocational skills, and training and education. Therefore, for all of the above reasons, relator should have been excused for failing to search for comparably paying employment, and the commission erred in denying her wage-loss compensation for the period requested.
 {¶ 15} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ. R. 53, and due consideration of relator's objections, we overrule relator's first objection and sustain her second objection. We adopt the magistrate's findings of fact and conclusions of law as our own, except insofar as they conflict with our above determinations. Accordingly, we grant relator's request for a writ of mandamus, ordering the commission to vacate its order that denied relator's application for working wage-loss compensation, and to find that relator is entitled to that compensation.
Objections sustained in part and overruled in part;
 writ of mandamus granted. *Page 9 
TYACK and McGRATH, JJ., concur. *Page 10 
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 16} Relator, Mary E. Jackson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for working wage loss compensation and ordering the commission to find that she is entitled to that compensation. *Page 11 
Findings of Fact: {¶ 17} 1. Relator sustained a work-related injury on November 10, 2000, and her claim has been allowed for "acute lumbar myositis; lumbar/lumbosacral disc degeneration."
 {¶ 18} 2. At the time of her injury, relator was working as a deputy sheriff earning approximately $22 per hour.
 {¶ 19} 3. Relator has permanent restrictions which prevent her from returning to her former position of employment.
 {¶ 20} 4. In 2002, relator sought to return to work with the Franklin County Sheriff.
However, by letter dated June 14, 2002, that request was denied as follows:
 This is to advise you that I am denying your request to return to duty. My denial is based upon the report that you submitted from your physician, Dr. Tanzer. In his communication of May 25, 2002, Dr. Tanzer reported that you could only return to duty with permanent light duty restrictions. In order to qualify for a return to duty, you have to be able to perform the essential functions of a deputy. Per the limitations noted by Dr. Tanzer, you cannot perform all of the essential functions of a deputy. For this reason, I have denied your request to return to duty.
 {¶ 21} 5. Relator took a disability retirement on August 1, 2002.
 {¶ 22} 6. Between 2003 and 2005, relator experienced several serious health problems unrelated to her work-related injury which hindered her ability to return to the workforce.
 {¶ 23} 7. In October 2006, relator obtained full-time employment through Staffmark, LLC, in a position paying her $8 per hour and providing the possibility of overtime pay at $12 per hour. After 18 months, relator received a two and one-half percent pay raise. *Page 12 
 {¶ 24} 8. In 2007, relator applied for wage loss compensation for the period commencing October 16, 2006 and continuing. Relator presented medical evidence of her continuing restrictions and paystubs beginning October 16, 2006 which showed her regular wages as well as her overtime wages. Relator did not present any evidence that she had continued to seek suitable employment which was comparably paying work during the time at issue.
 {¶ 25} 9. Relator's application was heard before a district hearing officer ("DHO") on March 11, 2008 and was denied. Specifically, the DHO concluded that relator failed to present sufficient evidence of any ongoing search for suitable employment that was comparably paying work. The DHO noted that relator's current job was full time; however, Ohio Adm. Code 4125-1-01 still requires an ongoing good-faith job search. Further, the DHO noted that relator testified that she was expecting a raise in the near future; however, the DHO noted that relator did not present any evidence indicating that her current position would necessarily result in any increase in pay that would further decrease or eliminate her wage loss.
 {¶ 26} 10. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on April 14, 2008. The SHO affirmed the prior DHO's order and denied relator's request for wage loss compensation. The SHO concluded that relator was obligated to produce evidence of a good-faith job search for suitable employment that was comparably paying work in spite of the fact that she had returned to full-time work activity beginning October 2006. The SHO noted further that, although relator testified that she was expecting a promotion to a position which would pay between $10 and $13 per hour, relator failed to provide any documentation substantiating that fact. The SHO *Page 13 
determined that there was substantial disparity between the hourly rate of relator's former position of employment ($22 per hour) and her current hourly rate ($8 per hour). The SHO also distinguished the facts and relator's case from the facts in State ex rel. Brinkman v. Indus.Comm. (1999), 87 Ohio St.3d 171, wherein the Supreme Court of Ohio determined that a job search was not required of a claimant who had returned to lucrative part-time employment with a realistic possibility that the position would become full time. The SHO did note that it would not be expected that relator would spend the same amount of time on a job search as an individual who is not working at all; however, the Ohio Administrative Code requires at least some effort regarding a continued job search where a claimant has returned to work at a position that is not comparably paying work. As an additional reason to deny her application for wage loss compensation, the SHO also stated that relator did not present evidence that she sought a position of employment with her employer of record at the outset of the requested period of wage loss as required by the Ohio Administrative Code. Although relator testified that since she was on disability retirement she would not expect her employer to accommodate her, the SHO noted that the employer's representative indicated at the hearing that nothing would preclude an employee on disability retirement from checking on the availability of suitable employment at the time of the request for wage loss.
 {¶ 27} 11. Relator's appeal was refused by order of the commission mailed April 29, 2008.
 {¶ 28} 12. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: *Page 14 {¶ 29} Relator contends the commission abused its discretion by denying her request for working wage loss compensation on the basis that she had failed to continue to search for suitable employment which was comparably paying work. Specifically, relator argues that a continued job search should not have been required by her for two reasons: (1) she was working a significant amount of overtime; and (2) her ending salary as a deputy sheriff was based primarily upon her longevity of government employment and was not due to the acquisition of any skills or experience which would transfer to similar high paying jobs. For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 30} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 31} Entitlement to wage loss compensation is governed by R.C. 4123.56(B)(1), which provides:
 If an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment due to an injury or occupational disease, the employee shall receive compensation at sixty-six and two-thirds per cent of the difference between the employee's average weekly wage and the employee's present earnings not to exceed the statewide average weekly wage. The payments may continue for up to a maximum of two hundred weeks[.] * * *
 {¶ 32} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a *Page 15 
direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel. The Andersons v. Indus. Comm. (1992),64 Ohio St.3d 539. As noted by the court in State ex rel. Watts v.Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.
 {¶ 33} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and to base the determination on, evidence relating to certain factors, including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to nonworking wage loss and working wage loss compensation. State ex rel. Pepsi-Cola Bottling Co. v. Morse
(1995), 72 Ohio St.3d 210; State ex rel. Reamer v. Indus. Comm. (1997),77 Ohio St.3d 450; and State ex rel. Rizer v. Indus. Comm. (2000),88 Ohio St.3d 1. A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.
 {¶ 34} Ohio Adm. Code 4125-1-01(C) identifies for claimants the relevant information which must be contained in an application for wage loss compensation. Ohio Adm. Code 4125-1-01(C)(5) specifically addresses the required evidence of the continued job search including wage loss statements indicating the number of potential employers sought, the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, *Page 16 
the method of contact, and the result of the contact. Thereafter, Ohio Adm. Code 4125-1-01(D) provides, in pertinent part:
 (D) The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation shall be denied. * * *
 In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
 (1) The claimant's search for suitable employment.
 (a) As a prerequisite to receiving wage loss compensation for any period during which such compensation is requested, the claimant shall demonstrate that he or she has:
 (i) Complied with paragraph (C)(2) of this rule and, if applicable, with paragraph (C)(3) of this rule;
 (ii) Sought suitable employment with the employer of record at the onset of the first period for which wage loss compensation is requested. The claimant shall also seek suitable employment with the employer of record where there has been an interruption in wage loss compensation benefits for a period of three months or more; and
 (iii) Registered with the ohio [sic] bureau of employment services and begun or continued a job search if no suitable employment is available with the employer of record.
 (b) A claimant may first search for suitable employment which is within his or her skills, prior employment history, and educational background. If within sixty days from the commencement of the claimant's job search, he or she is unable to find such employment, the claimant shall expand his or her job search to include entry level and/or unskilled employment opportunities.
 (c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work, except for those claimants who are *Page 17 
receiving public relief and are defined as work relief employees in Chapter 4127. of the Revised Code. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 35} Ohio Adm. Code 4125-1-01(D)(1)(c) provides certain relevant factors to be considered by the commission in evaluating whether a claimant has made a good-faith effort. Those factors including: the claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by the claimant to accept assistance from the Ohio Bureau of Workers' Compensation in finding employment; any refusal by the claimant to accept the assistance of any public or private employment agency; labor market conditions; the claimant's physical capabilities; any recent activity on the part of the claimant to change their place of residence and the impact such change would have on the reasonable probability of success and the search for employment; the claimant's economic status; the claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by the claimant and whether that employment constitutes a voluntary limitation on the claimant's present earnings; whether the claimant restricts a search of employment that would require the claimant to work fewer hours per week than worked in the former position of employment; and whether, as a result of physical restrictions, the claimant is enrolled in a rehabilitation program. *Page 18 
 {¶ 36} As noted above, one of the factors to be considered is the amount of time devoted to making perspective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working. Relator submitted evidence of her overtime hours and presented testimony of that fact as well. There is nothing in the record which would lead to the conclusion that the commission did not take into consideration the overtime claimant worked. In her brief, relator argues that she worked overtime 71 percent of the time. In reviewing her paystubs from October 16, 2006 through March 29, 2007, the magistrate notes that relator spent approximately 422 hours working overtime during 72 pay periods. That is an average of 5.8 hours of overtime worked each week. Represented another way, relator worked an average of 45 hours per week. As the SHO stated, a claimant working full time would not be expected to spend the same amount of time on a job search as an individual who was not working at all. In the present case, although relator averaged five hours of overtime each week, she admits that she spent no time at all seeking suitable employment which was comparably paying work in an effort to minimize the substantial wage loss. The magistrate finds that it was not an abuse of discretion for the commission to deny her wage loss compensation given that she spent no time at all on a job search.
 {¶ 37} Relator also argues that she should not be required to search for comparably paying work since the only reason she was paid $22 per hour as a deputy sheriff was because of the number of years she had served as a government employee. Relator contends that her salary is not evidence that she acquired any special skills which would transfer to equally high paying jobs. *Page 19 
 {¶ 38} Relator cites no case law in support of this argument and the magistrate is unable to find any that would support this finding. As such, the magistrate finds that this argument would not constitute a reason for the commission to find that she was not required to perform any job search after becoming reemployed.
 {¶ 39} Further, although relator cites State ex rel. Ooten v. SiegelInterior Specialists Co. (1998), 84 Ohio St.3d 255, andBrinkman in support of her arguments, those cases do not support her position. In Ooten, the injured worker had opted for full-time self-employment at reduced remuneration without first conducting a job search. The Supreme Court of Ohio denied his request for wage loss compensation. The Ooten court stated:
 Causal relationship [between wage loss and injury] is often satisfied by evidence of an unsuccessful search for employment at the pre-injury rate of compensation. While not universally required, mandating a work search under these facts is consistent with our directive to carefully scrutinize alternative employment that is not "regular" full-time work. See State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995), 72 Ohio St.3d 210[.] * * * This is to ensure that the claimant's job choice was motivated by the injury-induced unavailability of other work and was not a lifestyle choice. * * *
Id. at 256-257.
 {¶ 40} Relator takes phrases from the above quote out of context and argues that a job search is "not universally required" simply because the injured worker is not receiving wages that are comparably paying. Relator also cites Brinkman, wherein the Supreme Court of Ohio granted wage loss compensation to an injured worker who had secured a lucrative part-time job which had a realistic possibility of becoming full time. In that case, the court found the injured worker was not required to continue a job search. *Page 20 
 {¶ 41} The magistrate concludes that the commission did not abuse its discretion in finding that relator was required to pursue something of a job search under the facts of this case. As noted previously, when all 72 pay periods are considered, relator worked overtime for as few as zero hours per week to as many as 14.57 hours per week. During this 72 week period, relator averaged approximately six hours of overtime per week. Further, relator has failed to explain why she did not attempt a job search during the pay periods where she worked less than five hours of overtime per week. (Relator worked less than five hours of overtime per week for 32 out of 72 pay periods.) Instead, she argues that by working overtime she was making every effort to mitigate the wage loss. Further, although relator argues that she testified she was expecting a promotion to a position where she expected hourly earnings in the range of $10 and $13 per hour, a review of the transcript indicates otherwise. Specifically, relator indicated that she had applied for the position online, was expecting to receive an application through the mail, and had not been told that she would get the job. Further, the only evidence relator presented at all regarding the status of her current job came in a letter from Staffmark indicating the following:
 Mary Jackson has been employed with us since 10/16/2006. She works in the kitting area and is a full time associate. Her responsibilities include but are not limited to Collating paperwork, Assembling Kits, Setting up jobs per customers requirements, Counting product to ensure quantity, Pack product and prepare for shipment.
As such, the magistrate finds that the commission did not abuse its discretion in finding that she had not met her burden of proof.
 {¶ 42} Lastly, the commission also denied relator's request for wage loss compensation because she did not contact the sheriff's department in October 2006 *Page 21 
before she began other employment. Relator contends that she would not have expected the sheriff's department to rehire her since she had taken a disability retirement. Whether this is true or not, and whether this is a fair reason to deny relator wage loss compensation, the fact remains that she did not seek employment with the sheriff's department in October 2006. However, whether or not this is a proper reason to deny her application for wage loss, the record still supports the commission's determination that relator otherwise failed to sustain her burden of proving that she sought suitable employment which was comparably paying work in an effort to reduce or eliminate the wage loss.
 {¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her request for wage loss compensation and this court should deny her request for a writ of mandamus.
NOTICE TO THE PARTIES Civ. R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ. R. 53(D)(3)(b). *Page 1