[Cite as *State ex rel. Republic Servs., Inc. v. Indus. Comm.*, 2014-Ohio-312.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, ex rel. Republic Services, Inc., | : | |
| | : | |
| Relator, | : | |
| | : | No. 13AP-219 |
| v. | : | (REGULAR CALENDAR) |
| George L. Wright and Industrial Commission of Ohio, | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on January 30, 2014

*Taft Stettinius & Hollister LLP, Timothy L. Zix* and *Christopher B. Ermisch,* **for relator.**

*Plevin & Gallucci Co., L.P.A., John C. Calabrese,* **and** *David E. Gray, II,* **for respondent George L. Wright.**

*Michael DeWine,* **Attorney General, and** *John Smart,* **for respondent Industrial Commission of Ohio.**

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Republic Services, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering the Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent-claimant, George L. Wright, ("claimant"), working wage loss ("WWL") compensation. Relator ask us to order the commission to find that the claimant is not entitled to that compensation.

{¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court deny the request for a writ of mandamus.

{¶ 3} Relator generally argues that the commission abused its discretion by awarding claimant WWL compensation when he accepted a job at his brother's company without registering with the Ohio Department of Job and Family Services ("ODJFS") and conducting a job search for comparably paying work. He sets forth the following two specific objections:

> [1.] Magistrate erred in affirming award of wage loss compensation to a claimant who accepted a job with his brother's company at half his previous pay rate without registering with ODJFS or conducting any job search for comparable paying work.
>
> [2.] Magistrate erred in finding that statutory job search requirement was inapplicable despite finding that claimant accepted work with his brother at "significantly less" than his pre-injury rate.

{¶ 4} The arguments raised in relator's objections are essentially the same as those raised previously and addressed by the magistrate. We discuss them together below.

{¶ 5} R.C. 4123.56(B)(1) states:

> If an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment due to an injury or occupational disease, the employee shall receive compensation at sixty-six and two-thirds per cent of the difference between the employee's average weekly wage and the employee's present earnings not to exceed the statewide average weekly wage. The payments may continue for up to a maximum of two hundred weeks.

{¶ 6} Relevant provisions of Ohio Adm.Code 4125-1-01(A) state:

> (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the

claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.

(8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.

(9) "Working wage loss" means the dollar amount of the diminishment in wages sustained by a claimant who has returned to employment which is not his or her former position of employment. However, the extent of the diminishment must be the direct result of physical and/or psychiatric restriction(s) caused by the impairment that is causally related to an industrial injury or occupational disease in a claim allowed under Chapter 4123. of the Revised Code.

Also relevant to these discussions is Ohio Adm.Code 4125-1-01(D).

Pursuant to Ohio Adm.Code 4125-1-01(D), an injured worker has the burden of proving entitlement to wage-loss benefits. Ohio Adm.Code 4125-1-01(D)(1)(c) further states that a good-faith job search for comparably paying work is required of those seeking wage-loss compensation who have not returned to comparably paying work. "A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss." Ohio Adm.Code 4125-1-10(D)(1)(c). That section continues to provide a non-exclusive list of relevant factors to be considered in evaluating whether a claimant has made a good-faith effort.

*State ex rel. Bishop v. Indus. Comm.*, 10th Dist. No. 04AP-747, 2005-Ohio-4548, ¶ 10.

{¶ 7} While it is true that full-time employment does not automatically eliminate a claimant's duty to search for comparably paying work, *State ex rel. Yates v. Abbott Laboratories, Inc.*, 95 Ohio St.3d 142 (2002), it is equally true that the Supreme Court of Ohio has held that the job search is not mandatory. *State ex rel. Timken Co. v. Kovach*, 99 Ohio St.3d 21, 2003-Ohio-2450, ¶ 22. Rather, under certain circumstances, a claimant's failure to continue to seek employment will be excused.

{¶ 8} In *Yates*, the Supreme Court emphasized that these determinations must be made on a case-by-case basis. "In reality, the issue comprises two questions: (1) is a job search necessary and (2) if so, what is required? We have not been confronted with the first question within the context of regular full-time employment. *What other cases have so far taught, however, is that the question is not amenable to hard-and-fast rules—it is very dependent on circumstances.*" (Emphasis added.) *Yates* at 146-47.

{¶ 9} *Yates* further directed that "the overriding concern in all of these cases—as it has been since the seminal case of *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210—is the desire to ensure that a lower-paying position—regardless of hours—is necessitated by the disability and not motivated by lifestyle choice." *Yates* at 146-47.

{¶ 10} Relator here, nevertheless, argues that the failure to conduct a good-faith job search for suitable employment which is *comparably paying work* precludes an award of wage-loss compensation. Given the Supreme Court precedent cited above, we reject this argument and find no merit for the reasons stated in the magistrate's decision. The Supreme Court has very clearly stated that such requirement shall be considered on a case-by-case basis.

{¶ 11} Furthermore, for the reasons stated in the magistrate's decision, we reject relator's argument that the commission's reliance on *State ex rel. Brinkman v. Indus. Comm.*, 87 Ohio St.3d 171 (1999), and *State ex rel. Ameen v. Indus. Comm.*, 100 Ohio St.3d 161, 2003-Ohio-5362, was misplaced. We also note that, while the facts in *State ex rel. Ooten v. Indus. Comm.*, 84 Ohio St.3d 255 (1998), may indeed be more analogous considering the deference we must accord the commission regarding matters concerning credibility and the weight of the evidence, we find the magistrate did not err in concluding the commission did not abuse its discretion in awarding WWL compensation. The SHO affirmed the district hearing officer's ("DHO") order, which stated: "The [DHO] can find no evidence that the Injured Worker is attempting to voluntarily limit his earnings." (DHO order at 2.)

{¶ 12} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore

overrule relator's two objections to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Accordingly, the requested writ of mandamus is hereby denied.

*Objections overruled; writ denied.*

TYACK and McCORMAC, JJ., concur.

McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____

# APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| **State of Ohio, ex rel.**<br>**Republic Services, Inc.,** | : | |
| | : | |
| **Relator,** | | |
| | : | No.  13AP-219 |
| **v.** | | |
| | : | (REGULAR CALENDAR) |
| **George L. Wright and**<br>**Industrial Commission of Ohio,** | : | |
| | | |
| **Respondents.** | : | |
| | | |
| | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on September 13, 2013

*Taft Stettinius & Hollister LLP, Timothy L. Zix* **and** *Christopher B. Ermisch,* **for relator.**

*Plevin & Gallucci Co., L.P.A., John C. Calabrese,* **and** *David E. Gray, II,* **for respondent George L. Wright.**

*Michael DeWine,* **Attorney General, and** *John Smart,* **for respondent Industrial Commission of Ohio.**

### IN MANDAMUS

{¶ 13} Relator, Republic Services, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded working wage-loss ("WWL")

compensation to respondent George L. Wright ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.

Findings of Fact:

{¶ 14} 1. Claimant sustained a work-related injury on January 28, 2010 and his workers' compensation claim has been allowed for the following conditions:

> Left shoulder sprain; sprain left rotator cuff; superior glenoid labrum lesions (SLAP); left biceps tendon tear; osteoarthritis left shoulder.

{¶ 15} 2. Claimant's initial treating physician, John J. Kavlich, M.D., immediately placed restrictions on claimant which prohibited him from returning to his former position of employment.

{¶ 16} 3. Claimant underwent surgery, epidural steroid injections, and physical therapy.

{¶ 17} 4. Claimant received temporary total disability ("TTD") compensation until it was determined that his restrictions had become permanent and he would not be able to return to his former position of employment.

{¶ 18} 5. Because he was unable to return to work with relator, claimant began working full time at Marshall Wright Construction, a heavy construction company owned by his brother.

{¶ 19} 6. Claimant's hourly wage at Marshall Wright Construction was $10.00 per hour, significantly less than the $19.50 per hour he had been earning when employed by relator.

{¶ 20} 7. On July 23, 2012, claimant filed an application for WWL compensation.

{¶ 21} 8. Claimant's motion was heard before a district hearing officer ("DHO") on November 19, 2012 and was granted.

{¶ 22} The DHO relied on medical reports from Paul Freedman, M.D., and Paul M. Saluan, M.D., to find that claimant had physical restrictions which made it impossible for him to return to his former position of employment. Thereafter, the DHO awarded claimant WWL compensation commencing June 26, 2012, stating:

> The Injured Worker has returned to work full time at Marshall Wright Construction, a heavy construction company owned by his brother. The Injured Worker testified

at today's hearing that his brother has him doing primarily office work at this time to learn that aspect of the business; specifically taking bids, writing bids, contracts etc.... The Injured Worker also testified that he has done some light construction within his limitations when asked by his Employer. The Injured Worker testified that once his training period is over his wages are expected to increase.

It is the finding of the District Hearing Officer that in light of the fact that the Injured Worker's employed [sic] full time in a position with expected wage increases commensurate with his increasing knowledge of the business, it is not reasonable to require the Injured Worker to continue to look for employment with a comparable pay rate.

The District Hearing Officer can find no evidence that the Injured Worker is attempting to voluntarily limit his earnings as he testified that the current Employer is his brother's construction business which he inherited from their father and that Injured Worker was training to be the manual aspect of the construction trade by his father as he was growing up. The District Hearing Officer finds that the Injured Worker believes and has established that he is taking employment in a position that will support him long after his eligibility for wage loss compensation has expired, Brinkman v. Industrial Commission, 87 Ohio St.3d 171, 1999 Ohio 320.

{¶ 23} 9. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on January 7, 2013. The SHO affirmed the prior DHO order, stating:

The Staff Hearing Officer affirms the District Hearing Officer's finding that the impairment due to the allowed injury restricts the Injured Worker from returning to his former position of employment. The Injured Worker has returned to working full time at a construction company owned by his brother. This job allows him to work within his Restrictions as there is no job available working for his former Employer within his current restrictions. The Staff Hearing Officer specifically affirms the District Hearing Officer's finding that in light of the fact that the Injured Worker's full time employment is a position with expected wage increases commensurate with his increasing knowledge of the business, it is not reasonable to require the Injured Worker to continue to work for a less secure job with a higher pay rate.

{¶ 24} 10. Relator's further appeal was refused by order of the commission mailed February 1, 2013.

{¶ 25} 11. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 26} Relator contends that the commission abused its discretion by awarding claimant WWL compensation when claimant accepted a job at his brother's company without conducting a job search for comparably paying work.

{¶ 27} The magistrate finds that the commission did not abuse its discretion in awarding claimant WWL compensation because the commission relied on claimant's testimony that he was earning $10.00 per hour while learning the business and that he expected that his wages would increase as he continued his training.

{¶ 28} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 30} Entitlement to wage-loss compensation is governed by R.C. 4123.56(B)(1), which provides:

> If an employee in a claim allowed under this chapter suffers
> a wage loss as a result of returning to employment other than

> the employee's former position of employment due to an injury or occupational disease, the employee shall receive compensation at sixty-six and two-thirds per cent of the difference between the employee's average weekly wage and the employee's present earnings not to exceed the statewide average weekly wage. The payments may continue for up to a maximum of two hundred weeks.

{¶ 31} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993). This principle is equally applicable to claims for wage-loss compensation. *State ex rel. The Andersons v. Indus. Comm.*, 64 Ohio St.3d 539 (1992). As noted by the court in *State ex rel. Watts v. Schottenstein Stores Corp.*, 68 Ohio St.3d 118 (1993), a wage-loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage-loss.

{¶ 32} In considering a claimant's eligibility for wage-loss compensation, the commission is required to give consideration to, and base the determination on, evidence relating to certain factors including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before a claimant is entitled to both nonworking and WWL compensation. *State ex rel. Pepsi-Cola Bottling Co. v. Morse*, 72 Ohio St.3d 210 (1995); *State ex rel. Reamer v. Indus. Comm.*, 77 Ohio St.3d 450 (1997); and *State ex rel. Rizer v. Indus. Comm.*, 88 Ohio St.3d 1 (2000). A good-faith effort necessitates a claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage-loss.

{¶ 33} As a general rule, even after a claimant has secured employment, the claimant is required to continue searching for suitable employment which is comparably paying work. The goal is for the claimant to secure employment which alleviates the wage-loss. However, in certain instances, claimants have been relieved of the responsibility to continue searching for other employment to alleviate the wage-loss.

{¶ 34} The receipt of wage-loss compensation hinges on whether there is a causal relationship between the injury and the claimant's reduced earnings. Specifically, the

commission and courts look at whether the claimant's choice of a job was motivated by an injury-induced unavailability of other work and was not simply a lifestyle choice. *See,* for example, *State ex rel. Brinkman v. Indus. Comm.*, **87 Ohio St.3d 171 (1999) and** *State ex rel. Ooten v. Siegel Interior Specialists Co.*, **84 Ohio St.3d 255 (1998) and** *State ex rel. Ameen v. Indus. Comm.*, **100 Ohio St.3d 161, 2003-Ohio-5362.**

{¶ 35} In *Brinkman,* William A. Brinkman was a Columbus Police Officer who sustained multiple injuries in a work-related car accident. Brinkman was unable to return to his former position of employment and was granted a disability retirement.

{¶ 36} Following Brinkman's retirement, he obtained a part-time job that included the promise of a full-time position as they became available. The commission denied his request for wage-loss compensation finding that he had made a voluntary choice to maintain part-time work which resulted in an indefinite decrease in his wages.

{¶ 37} Ultimately, the Supreme Court of Ohio determined that Brinkman was entitled to wage-loss compensation. The court focused on the fact that wage-loss compensation does not last indefinitely; it ends after 200 weeks. The court noted that Brinkman had testified that part-time workers were given preference when full-time positions became available, finding that "[v]iewed in totality, the facts do not establish such a limitation or a life-style-motivated job selection—the two concerns that have prompted close examination of part-time work." *Brinkman* at 174.

{¶ 38} Similarly, in *Ameen,* Jane Ameen, sustained a work-related injury while employed as a nurse. Ameen's physical ability to return to her former position of employment was compromised and she was advised to explore different options. Eventually, Ameen returned to college and received a teaching degree.

{¶ 39} Ameen's teaching job paid slightly less than her nursing position and she applied for wage-loss compensation. The commission denied that request after concluding that she had voluntarily limited her income.

{¶ 40} Ultimately, the Supreme Court of Ohio determined that Ameen was entitled to wage-loss compensation. After reiterating that full-time employment does not necessarily relieve a claimant of continuing to seek other employment, the court found that requiring Ameen to continue looking for work with the expectation that she would leave her teaching job was not appropriate. Specifically, the court stated:

Employment that coincides with one's interests, desires, or aptitudes is not inherently suspect. The present claimant was permanently disqualified from her former position of employment, so a new career was a logical option, and claimant prepared for one. Claimant's decision to teach rather than to pursue an allied medical career should not, under these circumstances, be viewed unfavorably.

* * *

The commission has put claimant in a "Catch–22." If claimant had declined the teaching job and had kept looking for something more lucrative—as the order implies she should have—claimant would have been wageless. We suspect, however, that had claimant applied for nonworking wage-loss compensation during this search period, such compensation would have been denied because of her failure to take the teaching job that reduced her wage loss.

This case differs from the full-time employment situation in *State ex rel. Yates v. Abbott Laboratories, Inc.,* [95 Ohio St.3d 142, 2002-Ohio-2003]. There, the full-time clerical employment obtained by the claimant grossly underutilized her college degree and real estate license. Her underemployment was pivotal in determining that claimant was required to maintain—despite her full-time job—an ongoing search for something more in keeping with her talents and earning capability.

Here, claimant exploited the intellectual abilities that allowed her to become a nurse and accepted a commensurate academic challenge that led to a new career. Her career choice, moreover, was not one that was economically out of line with her former livelihood. Unlike in *Yates,* the present claimant's job has a future. There is a degree of job security, the expectation of raises, and potential for advancement.

Requiring this claimant to continue looking for work with the expectation that she will leave her teaching job is inappropriate. See *Brinkman,* 87 Ohio St.3d 171, 718 N.E.2d 897. Brinkman's injury forced him from his police officer's job. After a fruitless, full-time job search, he accepted a part-time position that paid $20 an hour and could expand to full-time. The commission denied wage-loss compensation, citing claimant's failure to keep looking for full-time work. We overturned that order, criticizing the commission's narrow analysis. Looking more broadly, we emphasized that

wage-loss compensation was statutorily limited to 200 weeks.

"[W]hen a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life—long after wage-loss compensation has expired." Id. at 174, 718 N.E.2d 897.

We cited with approval a Florida case, *Stahl v. Southeastern X-Ray* (Fla.App.1984), 447 So.2d 399, which upheld a claimant's right to wage-loss compensation despite termination of a job search. Stahl's postinjury employment paid less than his former job but showed real promise for advancement. Lauded by his supervisor, he had already received a significant raise despite his short tenure. His boss assured him that he had a future with the company and, considering everything, the claimant concluded—and the court agreed—that it would be foolish to "leave a good thing." Id. at 402.

Applying this reasoning to the current debate, it is equally inappropriate to have expected claimant to decline the teaching job or to continue seeking other work. As previously stated, claimant has a future with the school district. Again, there is job security, the prospect of salary increases, and advancement possibility. And there are other considerations that militate against the commission's determination. Claimant's position is presumably contractual and forecloses the option of leaving for another position on short notice. Equally important are the intangibles. Teaching entails commitment. It is a disservice to the claimant and the administration, faculty, and students who rely upon her to expect her to leave midterm should a better position surface.

*Id.* ¶ 11, 14-20.

{¶ 41} In the present case, it is undisputed that claimant cannot return to his former position of employment. In awarding him WWL compensation, the commission relied on claimant's testimony that he had the opportunity to work in his brother's construction business. At present, claimant is learning the business and, as a result, his pay is not commensurate with his pre-injury rate. However, claimant testified that, as he learns the business and becomes more involved, he will be making more money. As in some of the other cases, claimant secured steady employment, within his restrictions,

with a promise of longevity and increased wages. In this situation, the magistrate finds that the commission did not abuse its discretion in finding that claimant has not voluntarily limited his wages; instead, claimant has taken a job with the potential to minimize and eventually erase the wage-loss.

{¶ 42} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion by awarding WWL compensation to claimant and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).